Dugan, Appellant, *v.* Niglio, Appellant.

Argued October 9, 1969. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*James A. Ashton,* with him *Ashton & Stitt,* for plaintiff.

*Donald W. Bebenek,* with him *Frank M. Van Ameringen,* and *Meyer, Darragh, Buckler, Bebenek & Eck,* for defendant.

OPINION BY MR. JUSTICE O'BRIEN, November 11, 1969:

George Dugan, plaintiff below, brought an action of trespass against defendants Anthony Niglio, Electric Welding Company, and Fort Pitt Bridge Works. Dugan claimed damages for injuries allegedly sustained by him due to the negligent operation of a flatbed truck owned and operated by defendant Niglio. At trial, plaintiff consented to a voluntary nonsuit in favor of defendant Fort Pitt Bridge Works, and the court entered a compulsory nonsuit in favor of defendant Electric Welding Company. Following a week of trial, the jury returned a verdict slip which contained a finding that both parties were "guilty of negligence". The court molded this to a verdict for the defendant. Plaintiff filed motions for a new trial and for judgment n.o.v. against Niglio, and to remove the nonsuit entered in favor of Electric Welding Company. The court below denied the motion to remove the nonsuit in favor of Electric and that for judgment n.o.v. against Niglio, but granted plaintiff's motion for a new trial against Niglio. Defendant Niglio is here appealing the grant of the new trial, while plaintiff Dugan has appealed the refusal to remove the nonsuit entered in favor of Electric.

The facts leading up to the institution of this lawsuit are set forth in the opinion of the court below:

"On November 6, 1959, Anthony Niglio was driving his Dodge flatbed truck loaded with seven or eight thousand pounds of steel reinforcing bars and wire

mesh along Route 519 in the direction of Bridgeville. He had just entered Allegheny County when he realized that he had forgotten a bill of lading at the Electric Welding Company back in Canonsburg. There were no intersecting roads in the immediate vicinity so Niglio decided to turn around by backing his truck into a driveway which abutted the road. Niglio pulled his truck just beyond the driveway into which he intended to back by the truck's length and came to a stop. When the truck slowed and stopped, the plaintiff slowed down and brought his Chevrolet automobile to a stop five or six feet behind Niglio's truck. At this point, Route 519 is two lanes wide.

"The plaintiff testified that he came to a complete stop because he thought something had happened up ahead of him and he waited for the truck to move so that he could continue on in his direction. Niglio's truck completely blocked plaintiff's view. Niglio testified that he had a mirror on each side of his truck, but that they gave him no vision for twenty feet directly to the rear of the truck and he could not see the plaintiff's car behind him, because the wire mesh piled three to four feet high on the truck, by Niglio's own admission, completely obscured all vision through the rear window of the truck. By his own admission, Niglio made no attempt to ascertain whether or not it was safe for him to back up either by attempting to open the door and look or to otherwise determine the safety of a backward maneuver. Defendant admitted that he took no precaution to ascertain whether or not anyone was behind him and as he proceeded back the truck rammed into plaintiff's vehicle. Niglio testified that he first became aware that he had struck someone behind him when he heard a shatter of glass."

Niglio contends that the court below erred in granting a new trial. At various places in its opinion, the

court enumerated its reasons for granting the new trial. These included: (1) the court's error in charging on contributory negligence when no evidence of such existed; (2) the confusion in the mind of the jurors between determining liability and assessing damages, as shown in the court's interrogation of the jury when the verdict was returned; and (3) the verdict's being against the weight of the evidence and contrary to the interests of justice. We need not consider Niglio's arguments with regard to the first two of these grounds, for it is clear that the action of the court below can be sustained on the third ground.

The general standard of review of the grant or denial of a new trial is most restrictive. "The grant or refusal of a new trial will not be reversed on appeal, absent an abuse of discretion or error of law which controlled the outcome of the case." *Allison v. Snelling & Snelling, Inc.*, 425 Pa. 519, 229 A. 2d 861 (1967); *Vignoli v. Standard M. Freight, Inc.*, 418 Pa. 214, 210 A. 2d 271 (1965). Where the reason for the grant of the new trial is that the verdict was against the weight of the evidence, this scope of review is even more restrictive than it ordinarily is. In *Feltovich v. Sharon*, 409 Pa. 314, 317, 186 A. 2d 247 (1962), quoting from *Lenik Condemnation Case*, 404 Pa. 257, 259, 172 A. 2d 316 (1961), we stated: "One of the least assailable reasons for granting a new trial is the court's conviction that the verdict was against the weight of the evidence and that new process was dictated by the interests of justice. With reasons for this action given or appearing in the record, only a palpable abuse of discretion will cause us to overturn the court's action. . . ."

"To determine whether the action of a trial court in granting a new trial on the ground that a finding of the jury was against the weight of the evidence showed a palpable abuse of discretion, a reviewing court is re-

quired to examine the record and assess the weight of the evidence, not, as the trial judge, to determine whether the preponderance of the evidence opposed the verdict, but rather to determine whether the trial court in so finding plainly exceeded the limits of judicial discretion and invaded the exclusive domain of the jury. Exner v. Gangewere, 397 Pa. 58, 152 A. 2d 458 (1959)." *Williams Retail Stores, Inc. v. Toltzis,* 199 Pa. Superior Ct. 210, 184 A. 2d 596 (1962).

Mindful of this standard of review and the facts set forth above, we cannot find that the court below committed a palpable abuse of discretion in granting a new trial after a verdict for the defendant.

Nor did the court err in refusing to take off the nonsuit entered in favor of Electric. We agree with that court that the plaintiff's evidence, through Niglio, called as for cross-examination, was insufficient to warrant the submission to the jury of the question of Niglio's employee status. Plaintiff relies upon the facts that Niglio had been hauling and delivering materials five days a week for Electric exclusively since 1938, and that he kept his truck at Electric's plant. However, Niglio owned the truck himself, had his own PUC permit, paid for oil and gas himself, and was compensated on a mileage and tonnage basis. Most importantly, Niglio was not subject to Electric's control. "The characteristic of the employee relationship is that the master not only controls the result of the work but has the right to direct the way in which it shall be done, whereas the characteristic of the independent contractor relationship is that the person engaged in the work has the exclusive control of the manner of performing it, being responsible only for the result." *Johnson v. Angretti,* 364 Pa. 602, 607, 73 A. 2d 666 (1950). Niglio testified that he was not subject to the company's control and would not necessarily follow the

company's directions, if they tried to give him any, as he knew more about the business than they did. The fact that if informed that material was needed early on a specific job Niglio would try to oblige hardly means that Electric is controlling the way the work is done. In *Johnson v. Angretti,* supra at 608, we stated the rule in this area: "The general rule is that the driver of a truck engaged to do hauling is an independent contractor if it appears that he owned the truck which he himself drove and kept within his own control, storing it where he desired, paying all expenses incident to its operation, including the cost of oil and gasoline, that he was paid at a fixed rate for each part or unit of the job performed, and that he was not subject to orders of the employer except as to the place of loading and unloading." Under this standard, it is clear that Niglio was an independent contractor.

In appeal at No. 176 March Term, 1969, the order granting the new trial is affirmed; in appeal at No. 126 March Term, 1969, the judgment of nonsuit is affirmed.