Lambert, et al., *v.* Pittsburgh Bridge and Iron Works, Appellant.

Argued November 16, 1973. Before WRIGHT, P. J., WATKINS, JACOBS, HOFFMAN, CERCONE, and SPAETH, JJ. (SPAULDING, J., absent.)

*James A. McGregor, Jr.,* with him *Andrew L. Weil,* and *Egler, McGregor & Reinstadtler,* for appellant.

*Louis M. Tarasi, Jr.,* with him *John Alan Conte,* and *Conte, Courtney, Tarasi & Price,* for appellees.

OPINION BY HOFFMAN, J., April 3, 1974:

This is an appeal from a judgment in favor of the plaintiff-appellee, Daniel Lambert, who was seriously injured when an industrial split-wheel owned by the defendant-appellant, Pittsburgh Bridge and Iron Works (hereinafter "P. B. & I."), violently separated striking Lambert in the head.

P.B. & I. operates a business in Beaver County, in the course of which it uses forklift trucks in the stacking and transporting of equipment and supplies. Upon these forklifts are what are known as "split-wheels", which may be physically described, as follows: the wheels are assembled in two parts. The outer wheel, which includes the flange, has attached to it five bolts, by which the inner wheel is attached. In order to remove a tire, it is necessary to deflate the tire, remove

the nuts and separate the two parts of the wheel. When installing the new tire, the deflated tire is placed on the inner wheel; the outer wheel is then placed on the opposite side of the deflated tire in such a manner as to permit the bolts to pass through the corresponding holes on the inner wheel. Nuts are then affixed to the bolts and the tire is inflated to a pressure of 100 pounds.

On April 15, 1965, P.B. & I. sent one of its forklift split-wheels to the Beaver Valley Tire Service, which was in the business of selling new tires, recapping used tires and doing general tire repair work. P.B. & I. and Beaver Valley had had a long-standing business relationship, and on this particular job, Beaver Valley was to install a new tire on the wheel. Robert Mc-Candless, the owner of Beaver Valley, testified that he separated the wheel and removed the old tire. In so doing, he stated that the nuts and bolts "came off clean" and that he had no trouble separating the wheel. When McCandless was interrupted by a telephone call, the appellee herein, Daniel Lambert, who had been employed as a tire changer for approximately nine months prior thereto with Beaver Valley, continued the job. He placed a deflated new tire on the inner wheel and then proceeded to mount the outer wheel. He said that he had no difficulty placing the bolts and fastening the nuts by means of a four-way wrench. When the air pressure had reached 80 pounds, the wheel suddenly and violently separated, one portion of which struck him in the head and then in deflection carried to the ceiling approximately 14 feet above the floor, where it left an impression in the ceiling plaster.

This split-wheel was produced as an exhibit at trial, seven years after the accident. It was agreed that the condition of the wheel made it impossible to properly align the two portions of the wheel so as to fasten the

bolts and nuts adequately. The factual dispute arose out of the testimony of expert witnesses on each side who raised the question as to the point in time in which the defect arose.[1] At the conclusion of the case, the trial judge over the defendant's objection and repeated insistence that Section 388 of the Restatement of Torts (2d) was the law applicable to the case, charged the jury on the basis of Section 392 of the Restatement.[2] The relevant portion of the charge reads as follows: ". . . [L]iability is imposed upon persons who supply

[1] Dr. Foster, plaintiff's witness, testified that the wheel was delivered to the tire company in a defective condition. He stated that an original misalignment of the bolts in the outer wheel and a building of residue of dirt and grime combined to deform the threads of the wheel assembly. Defendant's experts stated that the defect arose from the violent breaking of the wheel on the day Lambert was injured. They opined that failure to fasten all the bolts securely prior to inflation caused the break and the deformation therefrom. All three experts agreed that, if the defective split-wheel assembly produced at trial and examined by each expert prior to trial were the same wheel as the one involved in the accident, the versions of the incident as testified by McCandless, who disassembled the wheel, and Lambert, who reassembled the wheel prior to the accident, could not be entirely factual. The condition of the wheel would preclude a joining of the outer to the inner wheel "with no difficulty." They also agreed that the defect would have been noticeable by reasonable inspection.

[2] "§392. Chattel Dangerous for Intended Use

"One who supplies to another, directly or through a third person, a chattel to be used for the supplier's business purposes is subject to liability to those for whose use the chattel is supplied, or to those whom he should expect to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by persons for whose use the chattel is supplied

"(a) if the supplier fails to exercise reasonable care to make the chattel safe for the use for which it is supplied, or

"(b) if he fails to exercise reasonable care to discover its dangerous condition or character, and to inform those whom he should expect to use it."

or furnish chattel, such as this wheel assembly for another use because of the fact that the use is one in which the supplier has a business. As we understand the evidence, as I say this wheel was used in the operation of the Defendant's business and because of that, the law has imposed upon the Defendant the Liability which I have read to you under those circumstances. The person supplying goods under these circumstances is required not only to give warning of dangers which he knows are involved in the use of the article or which from facts within his knowledge he knows are likely to become so involved, but the person who supplies the chattel, this is the person who delivered it or furnishes it, is required to subject the chattel before delivery to such inspections as the danger of using it in a defective condition makes it reasonable to require of him. . . . [I]f you conclude that the program of maintenance and inspection outlined by Mr. Chimley [in charge of maintenance at P.B. & I. at time of accident] under these circumstances in considering the type of wheel and the use of it to be put to, was not reasonable under the circumstances, then you may conclude that the Defendant was negligent in these circumstances in delivering a chattel in that condition without making a proper inspection."

The jury returned a verdict in favor of the plaintiff in the amount of $20,860.00. Post-trial motions were filed, and were denied by a court en banc. This appeal has followed.

In reviewing a denial of post-trial motions by a court en banc, this Court is limited in its scope of inquiry to whether the court clearly abused its discretion, on the basis of all the evidence, in entering the order, and whether there were plain errors of controlling law. *Dugan v. Niglio*, 436 Pa. 22, 258 A. 2d 501 (1969); *Eisert v. Jones*, 399 Pa. 204, 159 A. 2d 723

(1960). In so doing, we may affirm the judgment of the lower court where it is correct on any legal ground or theory disclosed by the record, regardless of the reason or theory adopted by the trial court. *Commonwealth v. Whitehouse*, 222 Pa. Superior Ct. 127, 292 A. 2d 469 (1972). Where the trial court instructs the jury on the controlling law, however, it must be assumed that the jury resolved the evidence on the basis of said law, and not on any other theory. If the jury is instructed to apply a standard of law or conduct which appears patently inapplicable to the facts in the record, judgment must be reversed and a new trial granted. On the other hand, if there is support, the record will be read in a light most favorable to the verdict winner and the rulings of the trial court. *Ballinger v. Howell Mfg. Co.*, 407 Pa. 319, 180 A. 2d 555 (1962).

Applying the law to the instant appeal, we must determine whether there was sufficient evidence to justify instructions to the jury on Section 392. If there was, our inquiry need go no further. If, however, the trial court erred in refusing to instruct the jury on the defendant's submitted theory, i.e., Restatement of Torts, 2d, §388,[3] the effect thereof, we believe, would have been crucial to the ultimate result of the case.

---

[3] "§388.  Chattel Known to be Dangerous for Intended Use

"One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier

"(a)  knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and

"(b)  has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and

"(c)  fails to exercise reasonable care to inform them of its dangerous condition or of the facts which made it likely to be dangerous."

The plaintiff's case consisted of the production of the alleged wheel, and the testimony of four witnesses: the plaintiff, the former owner of Beaver Valley Tire Service, the former chief of maintenance at defendant's place of business, and an expert metallurgical engineer. The defendant's case rested on the testimony of two expert witnesses: James Triggs, a consulting professional engineer: and, Russell Hastings, a professional engineer with direct experience as an Advance Engineer Manager for companies involved in the manufacture of industrial trucks and wheels.

On direct examination, Mr. McCandless testified that, as owner of the tire company, his company sold and mounted new tires or repaired old ones. He stated that he had removed the old tire from the split-wheel sent by P. B. & I., and had taken the wheel apart with no difficulty. He further said that from his observations, three feet from the wheel itself, he saw no indication of a defective condition in the wheel, although he qualified his assessment by saying that from that distance it would be impossible to observe any flaw in the bolt-nut mechanism. On cross-examination, McCandless admitted that he had been so busy that day that he could not complete the work nor take time to inspect the wheel. Daniel Lambert admitted that the bolts were in plain view and that he would have been looking directly at the allegedly defective portion of the wheel during the assembly of the wheel and mounting of the tire, but that he was also too busy on the day in question to make any observation. Plaintiff's witnesses all stated that it was their opinion and understanding that a defect in the wheel would have been rectified by the appellant. Each witness, however, admitted that he or other employees at the tire company were able to detect the type of defect present in the wheel and that had such a defect been observed they would not have attempted to inflate a

new tire on the assembly. Plaintiff's expert verified the fact that the defect was readily observable to the naked eye, and that, while the tire company was not responsible for *repairing* a defective wheel, it could *detect* a condition of disrepair in the course of its business.

Defendant's requests for points for charge, with respect to contributory negligence and §388 of the Restatement of Torts 2d, were rejected. The Court charged on the standard appearing in §392, *supra,* saying that the jury, if it believed the defect existed at the time of delivery, could impose liability on the defendant if it failed to either warn of a dangerous condition in the wheel or failed to reasonably inspect the wheel so as to discover same. Contributory negligence, in the words of the Court, could be found to exist only if ". . . Mr. Lambert in any way learned of that condition, and then failed to take adequate precautions for his own protection in using it. . . ."

The duty of reasonable inspection is entirely different when either §388 or §392 is applied. Under §392, the duty is clearly upon the supplier of the chattel. The user is barred recovery only if, knowing of the dangerous condition, he fails to take adequate precautions to protect himself. Under §388, the supplier is liable if he "knows or has reason to know that the chattel is or is likely to be dangerous," and fails to so warn. It is the duty of the user to reasonably inspect the chattel, and a supplier is never held liable for a condition ". . . which a mere casual looking over will disclose, . . . [h]owever, the condition, although readily observable, may be one which only persons of special experience would realize to be dangerous."[4] Comment K.

---

[4] The record discloses that both the plaintiff-appellee and his employer were competent enough to ascertain and recognize the de-

Having identified the critical differences between §§388 and 392, it is necessary that the activity of supplying the tire-wheel assembly be characterized. If the appellant may be considered a supplier of a chattel *"to be used for the supplier's business purposes"* (emphasis added), §392 was properly charged as the controlling law. On the other hand, if the appellant was merely a supplier *"for another to use"*, §388 was applicable. Comment (c) to §388 defines persons as included as "suppliers" under the Rule as "to all kinds of bailors, irrespective of whether the bailment is for a reward or gratuitous, and irrespective of whether the bailment is for use, transportation, safekeeping, *or repair."* (Emphasis added.)

In *Thomas v. Ribble*, 404 Pa. 296, 172 A. 2d 280 (1961), our Supreme Court affirmed a judgment of compulsory nonsuit in favor of the defendant-supplier of an automobile having a defective accelerator pedal (a block of wood covered by rubber was constructed upon the original pedal). The automobile which was given to the plaintiff's employer for the purpose of repair went out of control when a fellow employee applied the brakes and the built-up accelerator simultaneously, thereby striking and injuring the plaintiff. The Court stated at 300: "The standards contained in Section 388 apply to bailments for repair. See comment c

---

fect of the wheel, if they had looked. Neither did make even a casual inspection of the wheel, although they claim the wheel disassembled and assembled with no trouble, this being a direct contradiction to their own expert witness' evaluation of the condition of the wheel at the time it was delivered to them.

Comment (m) of §388, further elaborates on the party having the burden of reasonable inspection of a chattel: "The fact that a chattel is supplied for the use of others does not of itself impose upon the supplier a duty to make an inspection of the chattel, no matter how cursory, in order to discover whether it is fit for the use for which it is supplied."

to Section 388." Determining that plaintiff had failed, in his case-in-chief, to identify any notice on the part of the supplier-defendant that the accelerator was defective or dangerous, the Supreme Court held that nonsuit was proper. See also, *Wissman v. General Tire Company of Philadelphia*, 327 Pa. 215, 192 A. 633 (1937).

There is not a single case in this Commonwealth that supports application of Section 392 to the facts of the present case. The cases cited by the appellees in support of their position that Section 392 was, in fact, applicable to the instant case, are, in our opinion, totally inapposite and distinguishable. In each case, the defendant-supplier derived, either directly or indirectly, some form of pecuniary gain in its own business through the use of the chattel by the injured plaintiff. *Saganowich v. Hachikian*, 348 Pa. 313, 35 A. 2d 343 (1944) (plaintiff was injured as a result of a defective plug in a drum lent to plaintiff's employer as part of a sale of caustic soda); *Fullard v. Pittsburgh Urban Redevelopment Authority*, 222 Pa. Superior Ct. 184, 293 A. 2d 118 (1972) (plaintiff injured by defective chisel furnished by the defendant to plaintiff's employer for the purpose of removing ashes from a building owned and controlled by the defendant); *Labick v. Vicker*, 200 Pa. Superior Ct. 111, 186 A. 2d 874 (1962) (plaintiff injured by defective ladder furnished by the defendant for the purpose of washing defendant's walls and ceilings).

Consulting the Appendix to the Restatement of Torts, Volume 2, page 402 (1966), it is apparent that the drafters of Section 392 intended the Rule to apply to certain classes of carriers, shippers of goods, and "[p]ersons . . . supplying chattels for others to use for the supplier's business purpose in a number of situations, of which the most usual are the following: Owners of premises supplying scaffolds, appliances or

other chattels for the use of contractors, sub-contractors and their employees, in work which is being done for the owner." See *Court v. Pittsburgh and Lake Erie Railroad Co.*, 410 Pa. 520, 190 A. 2d 139 (1963), adopting §392 as controlling law in Pennsylvania, where a chattel is supplied by a carrier or shipper of goods.

We believe that Section 392 was not intended to cover every chattel *used in the supplier's business,* but was designed to impose a high degree of duty on the supplier of a chattel *for others to use for the suppliers' business purposes.* The latter situation, as evidenced by the case law, supposes a direct or indirect pecuniary benefit to the supplier by the use made of the chattel in a given situation. It does not purport to be applicable to a bailment for repair, irrespective of whether the chattel to be repaired is used in the supplier's business or not. The bailee, under those circumstances, is entrusted with the responsibility of repairing the chattel. Even if the bailee is unable to effect certain repairs beyond those contracted for, where, as in the instant case, the evidence discloses that the bailee over a long period of business dealing is competent to recognize certain defects or conditions of disrepair in a particular kind of chattel, the duty is on the bailee, and not on the bailor, to make reasonable inspections of the chattel to insure that its employees will not become injured thereby in the course of the intended bailment.[5]

The judgment of the lower court is reversed, and a new trial granted.

WATKINS, P. J., dissents.

---

[5] On retrial, the jury should be instructed fully with respect to the respective duties and responsibilities as provided in Section 388. Furthermore, the jury should be instructed that a failure to exercise the duty of reasonable inspection on the part of the plaintiff or his employer may bar recovery.