## Peck v. Lewis, Lewis v. Peck

436

*Howard Richard*, for plaintiff Peck.
*John Churchman*, for defendants Lewis, et al.
*Richard Allen Weisbord*, for plaintiff Lewis.
*Edward J. Carney*, for defendant Peck.

TOAL, *J.*, February 2, 1983—These are two companion lawsuits arising out of a motor vehicle accident on July 4, 1978 at the intersection of Union Avenue and Baltimore Pike, Lansdowne, Pa. The accident involved an automobile operated by Allen J. Peck and a fire engine owned by the Cardington-Stonehurst Fire Company which was driven by David J. Lewis. At the time of the accident the fire truck was responding to an alarm.

The two drivers brought separate lawsuits against one another with the fire company and the Township of Upper Darby listed as defendants in the Peck claim. These cases were consolidated and tried before a jury. A verdict was returned in favor of Lewis with a finding that Peck was 75 percent negligent and Lewis 25 percent negligent. Damages were awarded and reduced in accordance with the terms of the Pennsylvania Comparative Negligence Act. Thereafter, Peck moved for a new trial.

In his post-trial motions, plaintiff Peck assigns the following errors: One, the exclusion of testimony by witness Oreskovich as to the extent of visibility on Baltimore Avenue at the intersection where the accident occurred; two, the refusal of the trial judge to instruct the jury in accordance with certain points for charge submitted by Peck; three, the instruction of the jury by the trial judge on the exemption for emergency vehicles from the normal rules of the road; and four, that the verdict was against the law and the weight of the evidence. Because the court agrees with Peck's third assignment of error, we find it necessary to grant a new trial in this matter.

Greatly complicating this case was the stipulated fact that Peck had retrograde amnesia and was unable to recall any events after he had reached a point fifty feet from the intersection where the accident occurred. It was established at trial that tall buildings lined the streets at this point, making visibility of traffic approaching the intersection from the crossing street somewhat difficult. In an effort to prove that Peck's visibility along the street where the fire truck operated by Lewis was approaching was limited, counsel for Peck attempted to introduce the testimony of Officer Oreskovich. Upon objection from Lewis' counsel, the trial judge properly excluded this testimony. It is this exclusion which Peck assigns as the first error.

The issue before the court at that point was not what this police officer could see but, rather, what Peck could and did see. Though it was argued that the officer's testimony could be considered not for what the officer could personally see, but as evidence as to what anyone in that position could observe, the court correctly held that the issue was limited to the actual vision of Peck.

The testimony of this witness was not relevant to the issue of what Peck could see at the time of the accident. Conditions at the scene of the accident, at different times and with separate and distinct observations, were so variable that the officer's testimony could not prove what Peck actually saw. No evidence was introduced concerning where Peck was driving in the roadway. In addition, there was some testimony that Peck had moved around a parked car and, thus, was in the opposite lane of traffic at some point prior to the accident. Therefore, there was no way of determining the precise angle of vision that he had.

In light of these factors, it would have been error to allow this testimony to be admitted as evidence of

what Peck actually saw. The use of the testimony in this manner would have created a strong inference that Peck's vision was similarly limited to that which the officer attempted to describe. It would have been improper to create such an inference in the minds of the jurors and the court properly limited this testimony.

Peck next contends that it was error for the court to refuse plaintiff's points for charge numbers 11 and 12 which provided:

"11. In determining whether the defendant, David J. Lewis, at the time of his accident was driving with due regard for the safety of all persons, one factor for you to consider is whether the rate of speed at which he proceeded through the intersection was appropriate in light of a limited vision which he had as he approached the intersection of the intersecting street on which the plaintiff was proceeding by virtue of the building on the corner of that intersection.

"12. Where there is an obstruction to a driver's vision, his 'duty is not fulfilled when he proceeds when he cannot see . . . ' "

Peck insists that the court erred in failing to instruct the jury that they could take into consideration Lewis' limited vision and the fact that an emergency vehicle may not proceed through a red light when the driver's vision is obstructed.

The court's charge adequately covers those areas to which Peck refers. In charging the jury on the law with respect to emergency vehicles, the court used language contained in the Motor Vehicle Code, §3105(b) and stated:

"The driver of an emergency vehicle, when responding to an emergency call, or when responding to a fire alarm, may, one, proceed past a red signal

indication or stop sign, *but only after slowing down as may be necessary for safe operation*; two, may exceed the maximum speed limits, *so long as the driver does not endanger life and property* . . . Finally, this section does not relieve the driver of an emergency vehicle from the duty to drive with due regard for the safety of all persons. Thus, the impact of this provision of the Motor Vehicle Code is that the operator of an emergency vehicle is permitted to exceed the maximum posted speed limits, *so long as the driver does not endanger life or property*, and he is further permitted to proceed through an intersection against the red traffic signal *if he slows down as may be necessary for safe operations*. Those exemptions in favor of the operator of emergency vehicles are subject to the further limitation that in passing a red light or exceeding the posted speed limit, *the operator of the emergency vehicle must otherwise operate his vehicle with due care*. And he is not relieved of the duty to drive with due regard for the safety of all persons." (Emphasis added.) See 75 Pa.C.S.A. §3105(b).

Considering the facts of this case, it is apparent that the court's charge on this matter was sufficient and a correct statement of the law. Rosato v. Nationwide Insurance Co., 263 Pa. Super. 340, 397 A. 2d 1238 (1979). The court sufficiently instructed the jury as to the general duty of care which an operator of an emergency vehicle must exercise.

Peck also argues that the court erred in failing to instruct the jury that Lewis' right to proceed through the intersection "would only occur if the plaintiff (Peck) heard, or at least should have heard under the circumstances, the siren or other signals . . . " Counsel for Lewis argued that if the court were to charge the jury on this point, the

instruction should be further qualified by instructing the jury that they could consider whether Peck's conduct prior to the accident in playing his radio, having his windows closed and using his air conditioner was negligent. Counsel contended that this conduct prevented Peck from hearing the sirens. Upon the trial judge's indication of his intention to charge the jury with the inclusion of this qualification, counsel for Peck objected, arguing that no evidence existed upon which to base a charge of negligence on Peck's part. Peck's counsel then stated that if this qualification were to be added to his request, he would withdraw his requested instruction. As the court refused to charge the jury without this qualification, no instruction in this area was given to the jury.

The instructions requested by Peck were grounded upon an incorrect assumption that Lewis could disregard the normal rules of the road only upon a showing that Peck actually did or should have seen or heard the emergency signals. In effect, the request was an attempt to show negligence on Lewis' part by proving that Peck did not see or hear the signals on the approaching fire engine from which it could be inferred that the horn was not loud enough and the lights not at the intensity required by the Department of Transportation. However, the Motor Vehicle Code does not condition an emergency vehicle's right to disregard the normal rules of the road on the ability of an operator of another vehicle to see or hear the signals employed by the emergency vehicle. Thus, in light of the discussion that follows, the court finds that its refusal to charge on this issue was proper; however, the refusal was made without recognition of the underlying rationale we now offer.

Pursuant to the Motor Vehicle Code, emergency signals have been raised to an objective standard.

See 75 Pa.C.S.A. §§3105(c), 4571(f) and PennDOT Reg., Tit. 67, ch. 463. No longer is an emergency vehicle's right to proceed through a red light, or to ignore other rules of the road, conditioned upon its employing emergency signals which should have been heard or seen by automobile operators. See, e.g., City of Philadelphia v. Phila. Transport Co., 400 Pa. 315, 162 A. 2d 222 (1960); Rommel v. American Stores Co., 103 Pa. Super. 384, 157 A. 493 (1931). Rather, the 1976 Vehicle Code conditioned an emergency vehicle's right to an exemption from the normal rules of the road upon, inter alia, its use of visual and audible signals which conform to departmental regulations. See 75 Pa.C.S.A. §§4571(f) and 3105 which reads as follows:

"§3105. Drivers of emergency vehicles

"(a) General rule—The driver of an emergency vehicle, when responding to an emergency call or when in the pursuit of an actual or suspected violator of the law or when responding to but not upon returning from a fire alarm, may exercise the privileges set forth in this section, but subject to the conditions stated in this section . . .

"(c) Audible and visual signals required—The privileges granted in this section to an emergency vehicle shall apply only when the vehicle is making use of an audible signal and visual signals meeting the requirements and standards set forth in regulations adopted by the department, except that an emergency vehicle operated as a police vehicle need not be equipped with or display the visual signals . . .

"(e) Exercise of care—This section does not relieve the driver of an emergency vehicle from the duty to drive with due regard for the safety of all persons."

Hence, an emergency vehicle must initially satisfy two elements in order to be excused from the normal rules of the road: (1) it must be making use of an audible signal and visual signals, and (2) the signals must be of such an intensity to at least equal that required by the PennDOT regulations.[1] If both elements are proven by an operator of an emergency vehicle, the issue of whether an automobile operator did or should have seen or heard the signals becomes irrelevant to the consideration of whether the emergency vehicle may exercise the special privileges granted it by the Vehicle Code, 75 Pa.C.S.A. §3105. Evidence of whether another person did hear or see the emergency signals is relevant only to the issue of whether those signals were actually employed while the emergency vehicle was being operated. As the requested charge was not addressed to this issue but, rather, to Peck's failure to hear or see the signals which were employed on the fire engine, and that this failure constituted an excuse for his conduct, it was correct for the trial judge not to instruct the jury on this request by Peck. Viewed in the context of the law which should have been applied in this case, the request by Peck was misplaced and inapplicable to the issue at hand. Upon proof of the emergency vehicle's making use of signals which comply with department regulations, whether or not Peck actually heard or saw the signals is not relevant. If the objective standards set by the department were met, Peck was required to yield the right of way to the emergency vehicle regardless of whether or not he did or should have heard or seen the signals. 75 Pa.C.S.A. §3325(a).

Nonetheless, the court is troubled by the question

---

1. The absence of proof on this issue will be discussed infra.

of whether any instruction as to Lewis' rights as an operator of an emergency vehicle was proper at all. The Motor Vehicle Code allows an emergency vehicle to disregard the normal rules of the road "only when the vehicle is making use of an audible signal and visual signals meeting the requirements and standards set forth in regulations adopted by the department." 75 Pa.C.S.A. §3105(c). These signals have been raised to an objectively ascertainable intensity by virtue of Motor Vehicle Code §4571(f). Peck's third assignment of error concerns the effect of these regulations and requirements upon Lewis' right to assert an exception from the normal rules of the road.

Prior to the court's charge, Peck submitted a supplemental point for charge, which read as follows:

"There has been no evidence that the lights or audible signals were approved by the Secretary of Transportation. Therefore, the defendant, Lewis, may not claim the protection, if any, of the Motor Vehicle Code."

As there is no prescribed method for *approval* of emergency signals by the Department of Transportation, the Trial Judge properly refused to instruct the jury to this effect. In such a situation, the court is under no duty to correct or restate proposed points for charge which are not strictly accurate as drawn. Suravitz v. Prudential Insurance Company of America, 261 Pa. 390, 104 A. 754 (1918). However, "the requested point for charge, although erroneous, sufficiently alerted the trial judge to an important issue in the case." Com. v. Mulgrew, 475 Pa. 271, 274, 380 A. 2d 349 (1977). As such, the essence of Peck's request cannot be overlooked by the court and is a proper issue for review. Id.; Com. v. Sisak, 436 Pa. 262, 259 A. 2d 428 (1969).

It is clear that Peck's requested point, although couched in terms of "approval," was directed to Lewis' failure to produce evidence establishing that the signals on the fire truck met the regulations as stated in the Pennsylvania Vehicle Code. Peck's contention is that Lewis was only entitled to an exemption from the normal rules of the road in this case if he could prove compliance with the emergency signal regulations. With this argument the court must agree, and we award a new trial on this basis.

Defendant Lewis raises several arguments in rebuttal to Peck's assignment of error. First, Lewis contends that no regulations exist with which he could prove compliance. Clearly, this argument is meritless. Initially, we note that the briefs of Lewis explicitly make mention of the regulations which must be met by the lights on a fire truck. See PennDOT Reg., Tit. 67 ch. 463, et seq. Additionally, there is the provision of 75 Pa.C.S.A. §4103(b) which incorporates any federal standards to the emergency vehicle signals at issue in this case.[2]

Lewis next urges that the evidence presented is sufficient to establish that the emergency signals substantially complied with the required statutory regulations. While we view "substantial compliance" to be a contractual doctrine and have discovered no Pennsylvania cases extending that doctrine to a statutory obligation, we believe there is an even more compelling reason for rejecting that argument in this case. Specifically, we note

---

2. Neither the Pennsylvania nor the federal departments of transportation have promulgated any requirements relating to the intensity of audible signals on emergency vehicles, nor have there been any federal regulations promulgated with respect to the intensity requirements of lighting systems on an emergency vehicle.

the legislature's attempt to establish strict objective standards which must be met by emergency vehicles. Such a directive did not permit the court to submit to the jury the issue of whether the signals on the emergency vehicle substantially complied with the regulations promulgated by the Department of Transportation.

We find no legal basis for Lewis' argument that he was entitled to a presumption that the signals met the regulations. Lewis contends that because the fire truck was owned by a municipality, it must be presumed that the emergency signals met the state regulations. However, we have reviewed the cases cited by Lewis applying this type of presumption to official acts and find the facts and circumstances of those cases inapposite to the facts of this case. Therefore, the court does not find that the township is entitled to a presumption that its emergency vehicles were employing lights and sirens which met the PennDOT regulations.

Lewis also contends that any error in the charge was harmless. This argument is premised upon the fact that no regulations for the audible signals exist. Lewis argues that the audible signals would have been the only effective means of alerting Peck of the oncoming fire truck in light of the limited vision at the intersection. Thus, Lewis suggests that failure to conform to visual requirements was irrelevant and, since there were no existing audible regulations, any error in the charge with respect to the nonconformance to the regulations must be harmless.

In Lambert et al, v. Pittsburgh Bridge and Iron Works, 227 Pa. Super. 50, 323 A. 2d 107 (1974), aff'd. 463 Pa. 237, 344 A. 2d 810 (1975), the Superior Court stated:

"Where the trial court instructs the jury on the

controlling law . . . it must be assumed that the jury resolved the evidence on the basis of said law, and not on any other theory. If the jury is instructed to apply a standard of law or conduct which appears patently inapplicable to the facts in the record, judgment must be reversed and a new trial granted." Id. at 56, 323 A. 2d at 110.

If the error was such that it may have misled the jury to the complaining party's prejudice, the judgment must be reversed because an appellate court cannot surmise that the verdict was not affected thereby. Richmond v. A.F. of L. Medical Service Plan of Philadelphia, 421 Pa. 269, 218 A. 2d 303 (1966); Connelly et al, v. Kaufman and Baer Co., 349 Pa. 261, 37 A. 2d 125 (1944).

Applying these standards to the case presently before this court, we are unable to conclude that any error was harmless. While the audible signal may have been the only effective means of warning Peck of the fire truck's approach, we cannot assume the jury rendered its verdict upon this rationale. The importance of both signals must be viewed equally. In any event, we continue to adhere to the finding that Lewis had the burden of proving no audible requirements existed and that the visual signals met the state regulations. For these reasons, we do not accept Lewis' argument that no reversible error occurred in the instructions to the jury.

Lewis' final argument on this issue is that noncompliance with these regulations is irrelevant in the case of Lewis as plaintiff. The court does not accept this distinction. Whether Lewis' status is that of defendant or plaintiff, he retains the burden of proving that the emergency vehicle which he was operating was entitled to an exception from the

normal rules of the road. While we agree that Peck, as a defendant, had the burden of proving contributory negligence on the part of Lewis, we disagree with the suggestion that Lewis has no burden of proving compliance in his case as a plaintiff. Rather, compliance with these regulations is an essential element of Lewis' case in chief.

Peck's final assignment of error is that the verdict was against the law and the weight of the evidence. In light of our previous discussion and decision that the jury was incorrectly instructed as to the law in this case, we find it unnecessary to discuss this issue in any detail. Obviously, the jury was unable to correctly weigh the evidence in light of the instructions given, and their verdict could not have been consonant with the evidence. Thus, we see no purpose in addressing the merits of this issue.

In conclusion, we hold that it was error for the trial judge in this case to charge the jury with respect to the fire truck operated by Lewis having an exception from the normal rules of the road in the absence of any evidence proving that it was employing emergency signals which conformed to the regulations promulgated by the Department of Transportation. For this reason, it is the court's opinion that a new trial should be ordered in this matter.

## ORDER

And now, February 2, 1983, after considertion of the briefs and arguments of counsel and after review of the record of the trial of the above-captioned cases, it is ordered and decreed that plaintiff, Allen J. Peck's motion for new trial shall be and the same is hereby granted.