This is an appeal by the administratrix of the estate of Gus Rose, deceased, from a directed verdict entered in favor of Miller Company (Miller), a corporation. We affirm.
Plaintiff's intestate, Gus Rose, died as a result of an accident on 10 January 1978 in Dallas County. At that time, Rose was employed by Dallas Welding Machine and Metal Company (Dallas Welding) as a welder and had been employed in such capacity for approximately seventeen years. Some *Page 1238 
three to six weeks prior to the accident, an employee of Miller delivered a piston to Dallas Welding and requested that the shaft of the piston be replaced. No other instructions were given. The piston was eight to ten inches in diameter with a two to two and one-half inch diameter shaft. It weighed between 150 and 200 pounds. On 10 January 1978, John Strickland, President of Dallas Welding, and Rose began work on the piston. An inspection revealed that it was covered with a great deal of rust and sawdust. Because Strickland's company had performed similar work for Miller over the years, the presence of rust and sawdust on parts and equipment to be repaired did not appear unusual to them. Strickland had no standard procedure for cleaning off items brought into his business before working on them and on this occasion failed to clean the piston. After several hours of unsuccessfully attempting to press the shaft out of the piston by various methods, Rose suggested heating it with an oxyacetylene torch to expand and dislodge the frozen part or parts. Strickland agreed that heating was the correct procedure. After Rose had heated the piston for about three minutes, there was an explosion and Rose was fatally injured.
About two days after the accident, Strickland assembled the pieces of the piston he could find and while examining them noticed three plugs in the bottom. Neither Strickland or Rose had noticed these plugs before the explosion, although they had cursorily examined that particular area of the piston. The plugs indicated that the piston was manufactured with a cavity in it.
On 8 January 1979, the administratrix of the estate of Gus Rose filed a complaint in Dallas County Circuit Court seeking damages for the wrongful death of Rose. The complaint, as it relates to Miller, alleged that Miller negligently and wantonly maintained and caused the piston which exploded to be delivered to Rose's place of employment; that it was unreasonably dangerous and defective and that it was not reasonably safe for the intended use as impliedly warranted by Miller. The complaint was later amended to allege that Miller gave no warning or instructions to Rose when the piston was brought in for repairs. Miller denied all the material allegations of the complaint and further set out the defenses of lack of control by Miller over the piston, negligence by Rose's employer and the manufacturer, and new, independent and intervening cause. Further amended answers by Miller alleged contributory negligence on the part of Rose, the fact that the piston was not being used for its intended use, statute of limitations, assumption of risk, lack of knowledge and duty on the part of Miller, and that Dallas Welding was an independent contractor.
The case was tried before a jury on 10 December 1981. At the conclusion of plaintiff's case, Miller filed a motion for directed verdict, which was granted by the trial court. The plaintiff's motion for new trial was denied on 25 March 1982.
On appeal, Rose's administratrix maintains that the trial court erred in granting a directed verdict for Miller because there is a fact issue of actionable negligence on the part of Miller. In this respect, the law is well-settled:
 "In every case involving actionable negligence, there are necessarily three elements essential to its existence: (1) The existence of a duty on the part of the defendant to protect the plaintiff from the injury of which he complains; (2) A failure by the defendant to perform that duty; and (3) An injury to the plaintiff from such failure of the defendant. When these three elements are brought together, they unitedly constitute actionable negligence. The absence of any one of these renders a complaint bad or the evidence insufficient."
Calvert Fire Insurance Co. v. Green, 278 Ala. 673, 677,180 So.2d 269 (1965). The existence of a legal duty under a given statement of facts and circumstances is essentially a question of law for the court. See, Spurlin v. General Motors Corp.,528 F.2d 612 (5th Cir. 1976). It is elementary that where there is no duty, there can be no *Page 1239 
negligence. Bryant v. Morley, 406 So.2d 394 (Ala. 1981).
In considering the propriety of a directed verdict, our function is to view the evidence in a light most favorable to the non-moving party. If, by any interpretation, it can support a conclusion in favor of the non-moving party, we must reverse.Herston v. Whitesell, 374 So.2d 267 (Ala. 1979). A directed verdict is proper only where there is a complete absence of proof on an issue material to the cause of action or where there are no controverted issues of material fact upon which reasonable persons could differ. Caterpillar Tractor Co. v.Ford, 406 So.2d 854 (Ala. 1981).
Applying the above principles to the case before us, the essential inquiry is whether there is sufficient evidence to establish that on the occasion in question, Miller, a bailor-contractee owed a legal duty to Rose, an employee of Dallas Welding, the bailee-independent contractor. In this connection, the undisputed evidence shows that Miller requested Dallas Welding to repair the piston which exploded and caused Rose's death; that Dallas Welding had performed work for Miller numerous times over the years; that Miller gave no instructions to Strickland or Rose as to how the piston should be repaired; and that no representative of Miller was present when Strickland and Rose attempted such repairs.
The evidence further shows that the cause of the explosion which killed Rose was the application of heat to the piston with an oxyacetylene torch; that the piston contained a cavity in it; that the access to this cavity was three plugs which Strickland and Rose failed to see because they were stopped up with rust and sawdust; and that Strickland had no standard procedure for cleaning off items brought into his business, but had he done so and discovered the plugs, he would have known to remove one of the plugs before applying heat to permit pressure to escape. It was Rose who suggested the application of heat to the piston. Prior to Miller's delivering the piston and shaft to Dallas Welding, it had always been in good working order. There was no evidence that any agent, servant or employee of Miller had any knowledge of any alleged defect or dangerous condition in the piston, that the piston contained a cavity, or that the presence of plugs are indicative of a dangerous condition.
After a thorough review of the record, it is readily apparent that Dallas Welding was an independent contractor. Dallas Welding was not owned by Miller but was solely owned and managed by John Strickland. There is no evidence in the record to suggest that Miller exercised or retained any right of control over the manner or prosecution of the work. Miller's only concern was in the result of the work.
Generally speaking, the owner of a chattel who surrenders the entire control thereof to an independent contractor or bailee for repairs is not liable for injuries or death to an employee of that independent contractor unless the principal-owner was under some duty to such employee. Sloss-Sheffield Steel IronCo. v. Gardner, 17 Ala. App. 363, 85 So. 40 (1920); Coal CityMining Corp. v. Davis, 17 Ala. App. 22, 81 So. 358 (1919);Kimbrell v. St. Louis-San Francisco Ry. Co., 221 Ala. 505,129 So. 274 (1930).
In support of her position, the plaintiff argues that Miller had a legal duty to inform Rose of the history and condition of the piston because it was foreseeable that a torch would be used in repairing the piston; and that the defendant had a duty to inform Dallas Welding and its employees of the piston's dangerous potentialities. In support of those assertions, plaintiff contends that, normally, the question of whether an instrument is dangerous for purpose of the "dangerous instrumentality doctrine" is for the jury. Weatherby v.Meredith, 341 So.2d 139 (Ala. 1976).
Heretofore, this court has addressed the "dangerous instrumentality doctrine" only in cases involving land owner and attractive nuisance liability. See, Foster v. Alabama PowerCo., 395 So.2d 27 (Ala. 1981); Tolbert v. Gulsby, 333 So.2d 129
(Ala. 1976). The doctrine is based on a straight negligence *Page 1240 
theory. Under this doctrine the standard is one of reasonableness. Tolbert, supra. In its application to one who supplies a chattel for repair, the doctrine is very similar to the Restatement (Second) of Torts § 388 (1965), which reads thusly:
 "One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is applied, if the supplier
 "(a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and
 "(b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and
 "(c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous."
Here the evidence is insufficient to find a duty owed by Miller to Rose. Under § 388, the supplier is liable if he "knows or has reason to know that the chattel is or is likely to be dangerous," and fails to so warn. It is the duty of the user to reasonably inspect the chattel, and a supplier is never held liable for a condition "which a mere casual looking over will disclose. . . . However, the condition, although readily observable, may be one which only persons of special experience would realize to be dangerous." Comment K.
A similar rule was adopted in Lambert v. Pittsburgh Bridge Iron Works, 227 Pa. Super. 50, 323 A.2d 107 (1974), in which the Pennsylvania court concluded:
 "[W]here, as in the instant case, the evidence discloses that the bailee over a long period of business dealing is competent to recognize certain defects or conditions of disrepair in a particular kind of chattel, the duty is on the bailee, and not on the bailor, to make reasonable inspections of the chattel to insure that its employees will not become injured thereby in the course of the intended bailment."
Lambert, 323 A.2d at 112.
The evidence in this case discloses that neither Strickland nor Rose attempted to make a reasonable inspection of the piston or shaft. Strickland had done such work for approximately 20 years, while Rose had 16 years' experience. While this court is of the opinion that a piston in and of itself is clearly not a dangerous instrument within the scope of this case, we, nevertheless, find that both Strickland and Rose possessed sufficient experience to realize and detect any dangers presented by their performing work on the piston. The piston became dangerous only when Rose unskillfully applied heat to it without a reasonable inspection to determine the presence of the cavity or the plugs which are indicative of the cavity. There is no evidence to support plaintiff's contention that Miller was aware of the cavity in the piston or that heat would be used to make the repairs. We find there was no evidence produced in this case to establish a duty on the part of Miller with respect to the injury suffered by Rose based on either ordinary negligence or the "dangerous instrumentality doctrine."
Having considered and reviewed the entire record and briefs in a light most favorable to the plaintiff, we are of the opinion that the trial court properly granted a directed verdict for the defendant in this case.
AFFIRMED.
TORBERT, C.J., and FAULKNER, ALMON and ADAMS, JJ., concur. *Page 1241