Argued December 11, 1929; reversed February 25, 1930; rehearing
denied April 1, 1930

EKLOF *v.* WATERSTON ET AL.

(285 P. 201)

*P. J. Gallagher* of Portland (Gallagher & Conway, of Portland, on the brief) for appellant.

*Nicholas Jaureguy* of Portland (Keith A. Caldwell and Ronald L. Reilly, both of Portland, on the brief) for respondent.

RAND, J. On April 15, 1928, the defendant Bee Hive Auto Service company let for hire to its codefendants, Howard Waterston and Seymour Lee, a sedan automobile and delivered the same to them. While said codefendants were in the possession thereof as bailees, they so negligently operated it that they drove it onto the parking at the corner of Eleventh and Clay streets in the city of Portland and broke off a fire hydrant thereon and ran over and severely injured plaintiff, a pedestrian, who was at the time on the sidewalk at said point. Plaintiff alleged by his amended complaint that at the time he sustained the injuries complained of defendants were engaged in a joint enterprise and subsequently he was permitted to amend his complaint by interlineation so as to allege that at the time of the accident the brakes on the automobile were out of adjustment and were in such a defective condition that the car could not be stopped by the application thereof. By its answer the corporation denied that the brakes were out of adjustment or were defective and set up as a defense to the action the entering into of the contract of bailment, its delivery of the car thereunder, and that at the time plaintiff sustained the injuries complained of the automobile was being operated by said bailees for whose negligence the corporation was not responsible. These allegations were put in issue by the reply. Neither of said codefendants answered and default was entered against both of them. The

cause was tried to a jury and resulted in a verdict and judgment for plaintiff, from which the defendant corporation has appealed.

During the progress of the trial Waterston, one of the defendants in the action and one of the two persons to whom the automobile had been let, was called as a witness by plaintiff and he testified that after hiring the car from the defendant corporation he drove it east on Clay street to the place where the accident occurred; that running north and south on East Eleventh street there is a single street car track; that when he reached the intersection and was about 10 or 15 feet from the track, and while he was traveling about 30 miles an hour, which he admitted was in violation of the speed limits of the city, he observed a street car approaching from his left; that at the time he first observed it, it had reached the intersection of the two streets and was about 15 feet from the point where he was about to cross the track and was traveling very fast; that he then applied the brakes, the car swerved to his left and, seeing that he could not stop before reaching the track, he stepped on the gas and crossed the track ahead of the street car and, not being able to control the car, ran it over the curb onto the parking against a fire hydrant which broke off and was thrown against plaintiff; that he was accustomed to driving automobiles but did not know whether this automobile was equipped with four-wheel brakes or not. There was no evidence that he or any other witness for plaintiff had ever examined the brakes, or had any knowledge of their condition. There was, therefore, no evidence in the case of any witness that the brakes were out of adjustment or defective except the mere fact that when Waterston applied them in the emergency referred to the car swerved.

■ At the close of plaintiff's case in chief, the defendant corporation moved for a nonsuit and at the end of the trial for a directed verdict. The learned trial court, however, ruled that there was some evidence tending to establish defective brakes sufficient to go to the jury and instructed the jury that it could find against the defendant corporation if it should find that the brakes were defective and that such defect contributed to the injuries complained of. There was no evidence which in any way tended to show that the relation of master and servant or principal and agent existed between the defendant corporation and its codefendants and, hence, the corporation would not be responsible under the doctrine of *respondeat superior* for their acts or omissions. On the contrary, the whole evidence showed that the only relation between them was that of bailor and bailee. No contention is made that any officer or agent of the corporation was present or had any supervision or control of the car.

■ In this state, as at common law, the letting of a chattel for hire constitutes a bailment. The distinguishing feature in all bailments is that possession of the thing bailed is severed from ownership. While the bailor retains the general ownership, the bailee has true possession as distinguished from mere custody: 2 Street, Foundations of Legal Liability, pp. 252, 308. And where a chattel is let for hire, the bailee acquires as against strangers at least a special property in the subject of the bailment. Obviously there can be no letting of a chattel for hire unless there is a contract, either express or implied. That there was such a contract is conceded in this case although there is no proof of any specific contract other than the mere letting of the automobile for hire to the bailees. Under a contract

to let an automobile for hire, it is the duty of the bailor, although he is not an insurer, to furnish an automobile which is reasonably fit and proper for the use intended and, if he negligently fails to perform that duty and the hirer, or one riding with him in the automobile, sustains damages because of such negligence, the letter is answerable in a tort action for the damages sustained by either. The letter is also liable to the hirer for such damages in an action for breach of contract. In such case the hirer may elect whether to sue for the tort or for breach of contract. The principle is stated by Wharton in his Law of Negligence (2d Ed.), §435, as follows:

"Where a contract creates a duty, the neglect to perform that duty, as well as the negligent performance of it, is a ground of action for tort. Hence it is at the election of the party injured to sue either on the contract or the tort. For 'if the law,' says Lord Brougham, 'casts any duty upon a person, which he refuses or fails to perform, he is answerable in damages to those whom his refusal or failure injures'; and although, as we will presently see, this liability, if based on contract, must be limited to persons whose confidence in the party owing the duty is immediate, yet with this limitation, which is involved in the strict meaning of the term 'duty,' the proposition may be generally accepted."

█ There was no privity of contract between plaintiff and the defendant corporation and, hence, any failure by the corporation to perform any duty under its contract with the bailees will not sustain an action on the contract in favor of plaintiff and, if plaintiff may recover at all, it must be upon some other ground than a failure of the defendant corporation to perform the duties imposed by the contract, for whatever duties the corporation may owe to the hirers of the automobile it owed no contractual duty whatever to plaintiff.

 Automobiles are not inherently or per se dangerous machines so as to render their owners liable on that ground alone for injuries resulting from their use. See *Hopkins v. Droppers,* 184 Wis. 400 (198 N. W. 738, 36 A. L. R. 1156), and authorities there cited. It was established by the evidence that Waterston was 23 years of age and was an experienced driver, and there is no evidence showing that he was intoxicated or was a reckless, careless or incompetent driver, or one likely to cause injuries to others in the use of the automobile and, hence, the defendant corporation was not negligent in letting the automobile to him and Lee for hire. It was a rule at common law that one hiring a chattel impliedly represents himself as being competent to operate it and we think that rule was applicable in this case. There was, therefore, no negligence in letting the automobile to them for hire and the defendant corporation is not responsible for their negligence, for it is the general rule that, where an automobile is let to another, the owner is not liable for the negligence of the hirer. See note to *Mitchell v. Churches,* 119 Wash. 547 (206 P. 6, in 36 A. L. R. at 1153).

 But plaintiff contends that the defendant corporation's liability grows out of the fact that the brakes were defective and that the corporation knew or should have known by the exercise of reasonable diligence that they were defective at the time it let the car to its codefendants and, therefore, that defendant's own negligence was the direct and proximate cause of the injury. In tort the wrongdoer is liable for all the consequences which naturally flow from his wrongful act provided only that they be not too remote: 1 Street, Foundations of Legal Liability, p. 88. In the footnote, the author cites Quain, J., in *Sneesby v. Lancashire,*

*etc., R. Co.* (1874), L. R. 9 Q. B. 268: "In tort the defendant is liable for all the consequences of his illegal act where they are not so remote as to have no direct connection with the act." Wharton in his treatise on the Law of Negligence (2d Ed.), § 134, says:

"Supposing that if it had not been for the intervention of a responsible third party the defendant's negligence would have produced no damage to the plaintiff, is the defendant liable to the plaintiff? This question must be answered in the negative, for the general reason that casual connection between negligence and damage is broken by the interposition of independent responsible human action. I am negligent on a particular subject-matter as to which I am not contractually bound. Another person, moving independently, comes in, and either negligently or maliciously so acts as to make my negligence injurious to a third person. If so, the person so intervening acts as a nonconductor, and insulates my negligence, so that I can not be sued for the mischief which the person so intervening directly produces. He is the one who is liable to the person injured. I may be liable to him for my negligence in getting him into difficulty, but I am not liable to others for the negligence which he alone was the cause of making operative."

The same author says:

"At the same time, the fact that another person contributed either before the defendant's interposition or concurrently with such interposition in producing the damage is no defense": § 144.

"Nor when a negligence subsequent to that of the defendant is the agent by which the defendant's negligence proves injurious can the subsequent negligence be a bar to the plaintiff's recovery if such subsequent negligence was likely, in the usual and natural order of things, to follow from the defendant's negligence": Id., § 145.

As said by Professor Beale in his very valuable article on the proximate consequences of an act, 33 Harvard Law Review, 633, 637:

"Where the act is the failure merely of a legal duty, causation is established only when the doing of the act would have prevented the result; if the result would have happened just as it did whether the alleged actor had done his duty or not the failure to perform the duty was not a factor in the result, or, in other words, did not cause it."

The complaint alleged and the proof showed that the negligent driving of the automobile by the bailees was the direct and proximate cause of the injury complained of. The evidence also showed that the accident would have happened whether the brakes were in a good condition or not. That being so, the condition of the brakes was not the cause of the accident. At most, it was only a condition or circumstance surrounding the happening of the accident.

■ Thus far we have treated the case as if there were some evidence which would warrant the jury in concluding that the brakes were not in a reasonably fit and proper condition at the time of the accident. A careful examination of all the evidence in the case fails to show any fact from which that fact could be reasonably inferred. Under the whole evidence no reasonable mind could draw the conclusion either that the brakes were defective or, if defective, that their condition was the cause of the accident. The question of the defendant corporation's liability was submitted to the jury upon Waterston's testimony alone. He testified that in the emergency then confronting him, when he was within 15 feet of the track and the street car, going very fast, was within 15 feet of the point which he was about to cross, he, while going 30 miles

per hour, applied the brakes and upon the automobile swerving, he stepped on the accelerator, increasing the speed of the automobile, and passed just in front of the street car and, not having the automobile under control, ran up onto the parking and injured plaintiff. There was no testimony to show what caused the automobile to swerve. That question is purely a matter of conjecture upon which the guess of one person is as good as that of another. There was, therefore, no evidence to justify the inference drawn by the jury that the automobile swerved because of any particular or specific cause. Neither that witness nor any other testified that the cause of its swerving was the defective condition of the brakes.

For these reasons we are not bound by the verdict of the jury. The judgment against the defendant corporation must, therefore, be reversed and the cause will be remanded with directions to dismiss the action as to the Bee Hive Auto Service company.

CoshOW, C. J., BELT and ROSSMAN, JJ., concur.