Argued and submitted November 17, 1982, affirmed in part, reversed in part and remanded March 2, reconsideration allowed, former opinion (63 Or App 146, 662 P2d 790) modified May 11, 1983

# PORT OF PORTLAND,
*Appellant,*

*v.*

# BRADY-HAMILTON STEVEDORE CO.,
*Respondent.*

## (A7905-02423; CA A22438)
659 P2d 995

S. Joel Wilson, Portland, argued the cause for appellant. With him on the brief were Jon A. Schiewe and Bullivant, Wright, Leedy, Johnson, Pendergrass & Hoffman, Portland.

John Dudrey and Barbee B. Lyon, Portland, argued the cause for respondent. With them on the brief were Fredrickson, Weisensee & McCord, and Tonkon, Torp, Galen, Marmaduke & Booth, Portland.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

WARREN, J.

**WARREN, J.**

Plaintiff appeals from a judgment denying it damages for injury to a crane it had rented to defendant and awarding defendant $15,931.20 in damages on its counterclaim for losses suffered as a result of the crane's malfunction. Plaintiff argues that the trial court erred in accepting the jury's verdict and in denying its motion for mistrial, in limiting its cross-examination of two defense witnesses and in submitting all three counts of defendant's counterclaim to the jury. We reverse and remand for a new trial on the counterclaim only.

Plaintiff leases its docks and cranes to stevedoring companies for use in loading and unloading ships. On July 31, 1976, defendant had leased and was using one of plaintiff's rail-mounted cranes to load logs from the river onto a ship. While the crane was in use, the boom fell to the pier, causing damage to the boom and breaking loose the castings where the boom had been attached to the crane.

Plaintiff brought this action, alleging that defendant was liable for damage to the crane caused by breach of a tariff agreement governing the rental, by breach of the bailment agreement, by negligence and by negligent entrustment of the crane to an incompetent operator. Defendant counterclaimed, alleging economic losses caused by plaintiff's negligent failure properly to maintain the crane, by breach of an implied warranty and by breach of contract. The jury returned a verdict for defendant on plaintiff's claim and awarded defendant the amount of its prayer on the counterclaim. Plaintiff appeals.

■ Defendant argues initially that plaintiff's notice of appeal was filed prematurely. Judgment was entered on September 17, 1981, and the notice of appeal was filed on October 13, 1981. On September 9, 1981, however, plaintiff had filed what it called a "motion to allow questioning of jurors, motion for judgment n.o.v. or to set aside judgment and for a new trial." Because the order was denied orally and no written order was ever filed, defendant, relying on *Johnson v. Assured Employment*, 277 Or 11, 558 P2d 1228 (1977), argues that the notice of appeal was premature and that this court therefore has no jurisdiction. Assuming,

without deciding, that defendant is correct as to the consequences of a court's failure to enter a written order when the appellant moves for a judgment n.o.v. or for a new trial, that is not the case here. Plaintiff's motion, although captioned as defendant asserts, in fact asked only for an examination of jurors and for an extension of time to file a motion for judgment n.o.v. or for a new trial. No extension was granted, and no motion for judgment n.o.v. or new trial was ever filed. The notice of appeal was therefore not premature.

On the merits, plaintiff assigns error to the trial court's denial of its motion for mistrial and of its "motion to allow questioning of jurors," both based on alleged jury confusion that made the verdict's validity questionable. The jury was given three verdict forms. The first was a set of special interrogatories. If the jury were to answer the first question in the negative, *i.e.,* if it found that defendant was not negligent in any manner specified in the complaint, it was not to answer any other questions. The second form, a verdict for defendant, was to be used only if the jury decided that defendant was entitled to its verdict but was entitled to nothing on its counterclaim. The third form was to be used if the jury decided that defendant should prevail with respect to plaintiff's claim and should also recover on its counterclaim.

When the jury first returned, all three forms of verdict had been signed but without any amount of defendant's damages being specified. In response to the court's questioning, the foreperson replied that the jury intended defendant to receive damages but was not certain if it or the court was to decide the amount. The court then told the jury:

> "In respect to the counterclaim, if you decide to go that way, you decide the amount within the range of what I previously instructed you. * * * If that was the vote I'd better hand it back and — hand them back and adjourn for five minutes, and put that figure down if that's the way you're going.

The jury returned six minutes later with a verdict for defendant in the amount of its prayer.

The court then polled the jury and, after resolving to its satisfaction the manifest confusion of one of the

jurors, determined that nine of the 12 jurors found defendant was not negligent and also that the vote on the damages award was unanimous. After the court had accepted the verdict, plaintiff moved for a mistrial. The court denied the motion, and plaintiff declined the court's offer to reinstruct the jury.

After the trial, plaintiff moved to allow questioning of the jury, because of the confusion exhibited during the polling. The following day, plaintiff's attorney received a phone call from one of the jurors expressing concern about the verdict. She believed that the confused juror, whose vote had been included among the nine that found defendant was not negligent, had not actually voted that way during deliberations. Plaintiff informed the court of the juror's concern. The court denied plaintiff's motion to question the jurors.

Plaintiff argues that, because of the jurors' obvious confusion and the fact that they awarded defendant the full amount of its prayer after only six minutes of deliberation, the court should have granted its motion for mistrial. Although there was some initial confusion all around, it eventually became clear that only one juror still did not understand the court's question regarding the special interrogatory. As a result, the trial judge walked over and stood in front of her, held the verdict form in front of her and, pointing to the vote, asked her if that was how she had voted. She repeated several times that she had voted "no," as the verdict form showed.

■ With regard to the counterclaim, aside from the fact that the foreperson had initially signed all three forms, creating an ambiguity that the court resolved before polling, there was no apparent confusion when the jury was polled on its verdict for defendant. The court was satisfied, and rightly so, that the verdict was proper. In addition, that the deliberation was brief does not require the court to grant a mistrial simply because the jury awarded the full amount of defendant's prayer, especially in this case, where the damages requested coincided precisely with the amount defendant's customer had refused to pay it when the loss of use of the crane resulted in delay. We have been cited no evidence that defendant's damages were anything other

than the amount of the prayer. The court did not err in denying plaintiff's motion for a mistrial.

The court did not err in refusing to allow plaintiff's post-trial motion to allow questioning of jurors, even after receiving information that one of the jurors thought another juror had been confused. Before it accepted the verdict, the court had gone to great lengths to determine that juror's actual vote, and it was not necessary for the court to question her again because of another juror's uncertainty.

■ Plaintiff also assigns error to the trial court's rulings with regard to plaintiff's attempts to cross-examine two defense witnesses. As a means of supporting its negligent entrustment count, plaintiff wanted to elicit testimony from defendant's crane operator that numerous complaints had been filed regarding his past work performance and to cross-examine defendant's superintendent regarding his opinion that the crane operator was competent. If it was error to limit plaintiff's cross-examination, the error was harmless. In order to recover on its negligent entrustment count, plaintiff had to establish that defendant, through its operator, was negligent in its actual operation of the crane before and during the accident. The jury found, as demonstrated by its answer to a special interrogatory, that operator was not negligent in this respect, and the testimony plaintiff wanted to elicit would have had no bearing on that issue.

Plaintiff argues next that it was error to submit defendant's counterclaim to the jury because of alleged infirmities in all three of defendant's theories of recovery. As to the negligence count, plaintiff raised the affirmative defense that defendant's counterclaim was barred by the statute of limitations. The accident occurred on July 31, 1976. Plaintiff filed suit on May 23, 1979, more than two years after the accident. Plaintiff argues that the two-year statute of limitations in ORS 12.110(1) governs defendant's claim and that it is therefore time barred. ORS 12.110(1) is a "catch all" provision governing negligence actions that are not covered by other provisions of ORS chapter 12. *Coe v. Statesman-Journal,* 277 Or 117, 120, 560 P2d 254 (1977). It provides:

"An action for assault, battery, false imprisonment, or for any injury to the person or rights of another, not arising on contract, and not especially enumerated in this chapter, shall be commenced within two years; provided, that in an action at law based upon fraud or deceit, the limitation shall be deemed to commence only from the discovery of the fraud or deceit."

Defendant argues, and the trial court found, that defendant had six years from the date of the accident in which to file suit under ORS 12.080(4), which provides:

"An action for taking, detaining or injuring personal property, including an action for the specific recovery thereof;

"shall be commenced within six years."

If defendant's injury is an injury to personal property, then it had six years in which to file under ORS 12.080(4). Otherwise, it had two years under ORS 12.110(1), and its claim is time barred.

■     Defendant's claim is clearly one for economic loss caused by the unavailability of the crane. Its action *resulted* from an injury to personal property, but defendant's is not an "action for * * * [injury *to*] personal property." Plaintiff, which owns the property, has suffered an injury to the property itself. Whatever a party's right might be to sue for injury to property in which it has a leasehold interest when the alleged tortfeasor is a third party, it has no right of action for injury to the property when the alleged tortfeasor owns the property. It follows that defendant's counterclaim for negligence was governed by ORS 12.110(1) and was therefore time barred. It should not have been submitted to the jury.

■     For its implied warranty claim defendant alleged, and the trial court instructed the jury, that plaintiff warranted the crane to be suitable for its intended use. Plaintiff moved to strike the claim and argues that it should not have been submitted to the jury, because the implied warranties that are created by the UCC, ORS 72.3140 to 72.3150, arise only in the context of a sale, and this transaction involved a lease. Plaintiff is correct that, under the UCC, the implied warranties of merchantability and of fitness for a particular purpose appear to apply only to the

sale of goods,[1] but many courts have found implied warranties in a lease context, either by analogy to the UCC provisions or by construing those provisions to cover leases. *See All-States Leasing Co. v. Ochs,* 42 Or App 319, 334-35, 600 P2d 899 (1979) (observing in dictum that application of the UCC warranties to some leases, by analogy to sales, would be appropriate); *see also Annot.,* 48 ALR 3d 668 and cases there cited. However, in the case of a bailment for hire,[2] it is not necessary to resort to the UCC provisions in order to find an implied warranty that the goods are suitable for the use for which they were intended. In *Miller v. Hand Ford Sales, Inc.,* 216 Or 567, 340 P2d 181 (1959), the Supreme Court observed the general rule that the bailor of a chattel that is to be used for a purpose known to the bailor impliedly warrants that the chattel is reasonably suitable for that use. The court stated:

> "If the bailment is for the mutual benefit of both the bailor and the bailee, such as a let for hire agreement, then a higher duty arises on the part of the bailor, the general rule being that, while the bailor is not an absolute insurer against injuries from a defective chattel, he is charged with the duty of inspection to determine whether or not the chattel is fit for the purposes intended. Thus, if the defect was discoverable, he became liable for injuries to the bailee, arising from this unsafe condition, under the theory of an implied warranty of fitness. *Eklof v. Waterston,* 132 Or 479, 489, 285 P 201, 68 ALR 1002 [1930]; 6 Am Jur 309, Bailments § 194." 216 Or at 571.

---

[1] ORS 72.3140 provides that a warranty of merchantability "is implied in a contract for * * * sale if the seller is a merchant with respect to goods of that kind." Similarly, ORS 72.3150 creates an implied warranty of fitness for a particular purpose "where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods." Under ORS 72.1060, "[a] 'sale' consists in the passing of title from the seller to the buyer for a price."

[2] The trial court instructed the jury that if it found a bailment, then certain consequences resulted from that relationship. The instruction was unnecessary, because the lease of a chattel is a bailment for hire. *Eklof v. Waterston,* 132 Or 479, 285 P 201 (1930). The right of possession and control over the chattel indicates the existence of a bailment. *Dundas v. Lincoln County,* 48 Or App 1025, 618 P2d 978 (1980). Here, although plaintiff was apparently responsible for maintenance of the crane, it was operated by defendant's employe and was in defendant's possession and control during the term of the lease.

Here, neither party cites any direct evidence that plaintiff knew the use to which the crane would be put.[3] However, the record does establish that plaintiff routinely leases its cranes to stevedoring companies for loading and unloading ships. There is no evidence that defendant used the crane for anything other than the purpose for which cranes are ordinarily used. The inference is clear that plaintiff knew defendant would be using the crane to load or unload ships. Therefore, absent an effective disclaimer, plaintiff impliedly warranted the crane to be suitable for that purpose.

Plaintiff argues that a clause of the tariff agreement under which the parties operated effectively disclaimed any implied warranties that may otherwise have existed as a matter of law. The clause provided:

> "The equipment listed will be rented only at the risk of the renter and at the convenience of the Port, on Port facilities."

The trial court struck Count I of plaintiff's complaint, which alleged that by virtue of this provision defendant was liable for damage to the crane while in its possession. Defendant argues from this that the trial court found "that this exculpatory clause was void and unenforceable" and that plaintiff is bound by this ruling, because it did not object when the trial court struck Count I. The trial court made no such express finding, however, and we do not construe the striking of plaintiff's count as a ruling that the clause is void for all purposes. Although the clause may not operate to relieve plaintiff of liability for its own negligence, *see Real Good Food Store v. First National Bank,* 276 Or 1057, 557 P2d 654 (1976), it does not necessarily follow that the clause cannot exclude warranties. The question is whether the language of the clause was otherwise effective to disclaim all warranties.

■ Although we do not decide this case under the UCC, its disclaimer of warranty provisions are useful

---

[3] In fact, both parties' briefs are remarkably sketchy in their account of the details of this lease transaction. For example, the briefs do not disclose the duration of the lease term or the precise agreement as to the crane's maintenance. They focus instead on the details of the accident, none of which are germane to any issue presented on appeal. We note that, were it necessary to decide whether to extend UCC warranties to this lease transaction because of its similarity to a sale, the parties have not given us enough facts to determine if the extension would be appropriate.

guides in determining the effect of the clause at issue here. ORS 72.3160(2) and (3)(a) provide:

"Subject to subsection (3) of this section, to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous. Language to exclude all implied warranties of fitness is sufficient if it states, for example, that 'There are no warranties which extend beyond the description on the face hereof.'

"(3) Notwithstanding subsection (2) of this section:

"(a) Unless the circumstances indicate otherwise, all implied warranties are excluded by expressions like 'as is,' 'with all faults' or other language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty; * * *"

The thrust of these sections is that the disclaimer must be sufficient to alert the purchaser, or in this case the lessee, that the product comes with no promises as to its expected performance. Whatever the phrase "at the risk of the renter" means, we cannot say as a matter of law that, in common understanding, it would call a lessee's attention to the exclusion of warranties. A disclaimer need not necessarily mention the word "warranty," but we think it must be more explicit than the one here to have the effect claimed for it by plaintiff. The disclaimer clause is ambiguous, and it would have been proper to submit to the jury whether it was effective to alert a lessee that warranties were excluded. However, no evidence was offered concerning the meaning or scope of the language, and no request was made for a jury instruction on the disclaimer. Consequently, no error was preserved.

■       For its contract claim, defendant alleged that plaintiff had agreed to supply a crane suitable for the loading of logs aboard the "Midas Rhein" and that plaintiff had breached that agreement, because the crane was not in satisfactory working order. Plaintiff moved to strike the claim on the ground that there is no evidence in the record of such an express agreement, and defendant does not dispute this assertion. To the extent that defendant relied

on an express contract, its claim should have been stricken for lack of evidence. To the extent that it relied on an implied contract, its claim is nothing more than a restatement of its warranty claim. On this record, therefore, it was error to submit defendant's breach of contract claim to the jury.

The only counterclaim theory defendant was entitled to have submitted to the jury was for breach of implied warranty. Because the jury returned a general verdict on defendant's counterclaim, we are unable to determine on which theory of recovery the jury based its verdict. Our decision that the negligence and breach of contract claims were not properly submitted to the jury therefore requires a retrial on the counterclaim.[4] The judgment is otherwise affirmed.

Affirmed in part; reversed in part; and remanded for a new trial on the implied warranty counterclaim only.

---

[4] Defendant, relying on cases from other jurisdictions, argues that, because the jury returned a general verdict, we must not reverse if the verdict is supported by any theory of recovery. That is not the law in Oregon. *See, e.g., Hornbeck v. Western States Fire Apparatus,* 280 Or 647, 572 P2d 620 (1977); *Pavlik v. Albertson's, Inc.,* 253 Or 370, 454 P2d 852 (1969).