20 N.J. Super. 198 (1952)
89 A.2d 445
ERIC NELSON, PLAINTIFF-APPELLANT,
v.
FRUEHAUF TRAILER COMPANY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued May 19, 1952.
Decided June 18, 1952.
*199 Before Judges McGEEHAN, JAYNE and GOLDMANN.
Mr. Nathan Baker argued the cause for appellant (Mr. Bernard Chazen, on the brief).
Mr. Raymond L. Cunneen argued the cause for respondent (Mr. Joseph S. Slowinski, on the brief).
The opinion of the court was delivered by McGEEHAN, S.J.A.D.
The plaintiff, employed by a trucking concern as a tractor and trailer driver, sued the Fruehauf Trailer Company, a manufacturer of trailers, for injuries he sustained on February 23, 1950, when the door of a trailer fell off and struck him. The defendant's motion *200 for dismissal, made at the end of the entire case, was granted and the plaintiff appeals.
On February 10, 1950, plaintiff's employer placed an order with the defendant for a new Fruehauf trailer, delivery thereof to be made in three weeks according to a notation on the purchase order. On February 22, 1950, plaintiff's employer called the manager of the defendant, told him he had a load of radiators to pick up, that all his equipment was out in Chicago, and requested the loan of a trailer so that he would not lose the account. Without charge, the defendant loaned the trailer involved in this suit. It was a "Trailmobile," manufactured by the Trailer Company of America, which the defendant had accepted as a trade-in about a week before this loan. It was about 30 feet long, the body was corrugated steel with steel-covered corner posts, and it had two doors at the rear which opened outwards. The doors were made of metal, had steel frames covered by 14-gauge metal on the outside, and the doors were attached to the corner posts of the body by strap hinges. There were three strap hinges on each door, each hinge with three bolts on the door and two bolts on the corner posts. According to the plaintiff, each door weighed about 100 to 150 pounds and measured about six feet by three feet. There was a handle on each door about a foot above the bottom of the floor of the trailer, and through these handles a long iron rod or lever was inserted to keep the doors closed.
Pursuant to the directions of his employer, the plaintiff drove a tractor to the defendant's plant and there attached the loaned trailer to the tractor. On his employer's business, he then proceeded to a plant in Bayonne, where he picked up a load of radiators, which were placed in the trailer. He parked the tractor and loaded trailer in Bayonne overnight, and on the following day proceeded to Linden to deliver the radiators. His injury occurred after he arrived at his Linden destination, when he attempted to open the doors of the trailer preparatory to unloading.
Before accepting the trailer as a trade-in, the defendant's *201 manager made the customary inspection, which included opening and closing the doors of the trailer, and found no condition requiring repair. At the time the plaintiff picked up the trailer at the defendant's plant, another employee of defendant opened and closed the doors and inspected the hinges and found them in good working order. Later, when the plaintiff arrived at the Bayonne plant to make the pick-up of the radiators, he opened and closed the trailer doors. His testimony was that he found nothing wrong with them at that time and that they swung out and closed easily.
As to the accident itself, the plaintiff testified he was standing on the ground when he attempted to open the doors and "As I pulled the lever out, the door came out and it fell on top of my head"; also, "I pulled the lever out and I opened the door. The door fell on top of my head." An employee of the consignee of the radiators testified: "Well, he got out and lifted his pin and pulled his handle out and swung it around, which automatically unlocks the door, and pulled on the door to pull it open, and it opened about, oh, I would say, eight inches to a foot, and the top hinge pulled loose and the door fell, and as it fell I hollered and stepped aside, and he turned to duck and the door came down but it was too late, and as the door came down, why, it snapped the bottom hinge, it bent the bottom hinge and snapped that." The latter witness also testified that the door fell to the ground, his inspection disclosed there was rust around the hinges, "there was wood inside the truck" and he noticed that the wood "was rotted and the bolts holding the hinges had pulled through."
In answer to the question, "And what was the arrangement you made with the Fruehauf people concerning the use of a trailer while the order is pending?" the plaintiff's employer answered, "Well, he says, `If you need a trailer in the meantime, you call up for it and we will loan you a trailer' and when I did, Mr. Lorre on the phone says, `Make sure you cover it for liability and property damage and compensation.'" Mr. Lorre is defendant's manager.
*202 The trial court based the dismissal on its finding that the bailment was a gratuitous bailment for the sole benefit of the bailee, the defect was latent, and there was no evidence which would support a finding that the defendant had any knowledge of the defect.
The plaintiff does not claim that there was sufficient evidence to support a finding that the defendant knew, or from facts known to it should have realized, that the chattel was, or was likely to be, dangerous for the use for which it was supplied. Therefore, if the bailment was purely gratuitous and for the sole benefit of the bailee, the plaintiff failed to supply an essential element of proof necessary to subject the bailor to liability for the injuries sustained by the bailee's servant. Restatement, Torts, § 388, and Comment (c) thereon; Prosser on Torts, p. 669 (1941); Salmond on Torts (10th ed. 1945), p. 568; 6 Am. Jur. (Rev. ed.), Bailments, § 193; 131 A.L.R. 855; 61 A.L.R. 1338; 12 A.L.R. 793.
The plaintiff contends that the trial court erred in dismissing, because the bailment was a bailment for the mutual benefit of the bailor and bailee and such a bailment imposes an additional obligation upon the bailor; namely, the obligation to subject the article to such an inspection as the danger of using it in a defective condition makes it reasonable to require of him. Restatement, Torts, § 392 and Comments (a) and (b) thereon are cited in support. The argument advanced is that the defendant's gratuitous loan of the trailer constituted a bailment for mutual benefit, because (1) the loan of the trailer was made pursuant to the defendant's own business purposes; and (2) the trailer was furnished pursuant to a promise to the bailee made at the time the new trailer was ordered and to retain his good will.
If the custody or use of the bailed article is incidental to some other business transaction between the parties, it may result in a bailment for mutual benefit, even though the loan is gratuitous and for the use of the bailee. 4 Williston on Contracts (Rev. ed. 1936), § 1040. Thus, if *203 the gratuitous loan is made for trial purposes to induce a purchase (Rauber v. Zinner, 125 N.J.L. 85 (Sup. Ct. 1940)), or if a promise, express or implied, that a later gratuitous loan will be made forms part of the consideration for the purchase, a bailment for mutual benefit results. Here, there was no proof that a promise to make such a loan of a trailer was part of the inducement to the purchase, or that it formed any part of the consideration therefor. Nor was there any proof that the bailee in making the purchase relied on any custom on the part of the defendant to make a gratuitous loan of a trailer to one awaiting delivery of a new trailer on order; in fact, there was no proof of any such custom. The mere facts that the bailee had a trailer on order at the time of the gratuitous loan and that the defendant's representative had informed the bailee at the time of purchase that the defendant would loan him a trailer, if requested, while the order was pending, are not sufficient to transform the bailment into a bailment for mutual benefit.
The judgment is affirmed.