Argued May 4, reversed with directions June 3, 1959

# MILLER *v.* HAND FORD SALES, INC.

340 P. 2d 181

*Carl G. Helm,* La Grande, argued the cause and filed briefs for the appellant.

*Charles R. Cater,* La Grande, argued the cause for respondent. With him on the brief was Ross E. Hearing, La Grande.

Before MCALLISTER, Chief Justice, and ROSSMAN, LUSK, WARNER, PERRY, CRAWFORD and MILLARD, Justices.

PERRY, J.

The plaintiff brought this action against the defendant to recover damages for personal injuries.

It is conceded by the parties that plaintiff's cause of action is based upon the theory of the defendant's breach of warranty arising out of a bailment.

The cause was tried before a jury and the result was a verdict for the defendant. On motion of plaintiff, the trial court set aside the verdict and granted a new trial. From this ruling the defendant appeals.

Defendant's principal assignment of error is that the trial court should have allowed its motion for a directed verdict. If this contention is sound, it is not necessary for us to consider whether the trial court erred in granting plaintiff's motion for a new trial, based upon erroneous instructions to the jury.

■ The evidence, which under this assignment of error must be construed in its most favorable aspect to support the contentions of the plaintiff, is as follows:

The plaintiff and her husband were the joint owners of a Studebaker automobile. On May 28, 1955, Mr. Miller, husband of the plaintiff, took the automobile to the defendant's garage for some repair work. He testified that at the garage the following occurred:

"A Well, as I recall, it was a clutch deal, one of them things that drop out unexpectedly, and this was the 28th which was Saturday. This happened about 3 o'clock in the afternoon so Mrs. Miller's brother and his wife were coming up that night and I went—drove down to Mr. Hand's garage to see if I could get it fixed and they said no, it was a three-day holiday and most of their men had already left and they wouldn't even touch it, so I left it there.

"Q Now, what was done about a substitute car?

"A I asked him if he could furnish me some kind of transportation—that I didn't want to take any trips.

* * * * *

"A Well, Mr. Hand said, 'Sure, we can get

something.' 'Well,' I said, 'I am willing to pay for it.' He says, 'No, we can't charge you.' They have to have a special license or something, I don't know, but I told him that the brother-in-law and sister-in-law would be here and we would like to have a car to run downtown and get the groceries, and so forth, at least, and he says, 'Well, we'll pick you out something.' He and Mr. — the big heavy fellow, I can't think of his name—anyhow, he is one of their top salesmen, the head salesman—they sparred around a little bit and says—finally come to the conclusion they would let me use this Chevrolet, and I said, 'Well, that's fine.' "

Mr. Miller then drove the Chevrolet to his home. The plaintiff received her injuries on the 28th day of May, 1955, while attempting to alight from the front seat of the Chevrolet automobile. She slid across the front seat from the left side to the right side and in the process a cut was sustained on her left knee and leg, apparently from a sharp-edged strip of metal which encased the radio and could not be readily seen by a driver or passenger in the front seat of the automobile as it was beneath the dashboard.

There is no evidence that the defendant had knowledge of this condition prior to the plaintiff suffering injury. There is evidence that defendant had on some prior occasions made loans of the use of automobiles under similar circumstances.

Since the plaintiff's right of recovery is grounded on the contractual relationship arising out of the bailment, we must first determine the nature of the bailment to determine the contractual obligation of the defendant.

■ The duties of bailor are generally to be determined according to the character of the bailment; that is, whether the bailment is one for mutual benefit, or

gratuitous. 4 Williston on Contracts, rev ed, 2889, § 1033; 8 CJS 242, Bailments § 7.

■ It is the general rule of law, well-established in both England and this country, that, if the bailment of a chattel is gratuitous, the bailor has but a minimum duty toward the bailee and that is to warn him of any defects in the chattel of which he is aware that are likely to cause injury to the person or property of the borrower. 4 Williston on Contracts, rev ed, 2902, § 1039; 12 ALR 766; 61 ALR 1333; 131 ALR 841; 46 ALR2d 397, 439.

■ If the bailment is for the mutual benefit of both the bailor and the bailee, such as a let for hire agreement, then a higher duty arises on the part of the bailor, the general rule being that, while the bailor is not an absolute insurer against injuries from a defective chattel, he is charged with the duty of inspection to determine whether or not the chattel is fit for the purposes intended. Thus, if the defect was discoverable, he became liable for injuries to the bailee, arising from this unsafe condition, under the theory of an implied warranty of fitness. *Eklof v. Waterston,* 132 Or 479, 489, 285 P 201, 68 ALR 1002; 6 Am Jur 309, Bailments § 194.

■ While it is contended by the plaintiff, and contested by the defendant, that the bailment was for her benefit which created a privity relationship with defendant, and this fact was known and agreed to by defendant, we will consider this case in the light contended for by the plaintiff. This question is of importance to the plaintiff, because her cause of action is based upon the theory of the breach of an implied warranty which arises only out of the privity of contract. Under this view of the facts, the plaintiff's

rights are to be considered as though she had arranged with the defendant for the use of the Chevrolet automobile.

■ It seems clear from these statements of law that the sole question then is whether the facts disclose a bailment for mutual benefit. A bailment for mutual benefit arises whenever it appears that both of the parties to the contract receive a benefit from the transaction.

4 Williston on Contracts, rev ed, 2904, § 1040, divides bailments for mutual benefit into these several classes:

"(1) Where the bailee hires the use of the property.

"(2) Where the bailor employs the bailee to do some work upon the property.

"(3) Where the bailor hires the bailee to store the property.

"(4) Where the property is bailed as a pledge or security for a debt or other obligation.

"(5) Where the bailor employs the bailee to carry the property.

"(6) Where the bailee is to act as factor or agent for the bailor in the sale of the property.

"(7) Where the custody or use of the property is incidental to some other business transaction between the parties."

The plaintiff contends that the benefit to the defendant was the good will which he created with his customers by loaning them a car while the customer's car was being repaired, thus bringing the plaintiff within the 7th classification above set out. She relies upon the following cited cases: *Bogart v. Cohen-Anderson Co.,* 164 Or 233, 236, 98 P2d 720; *Woodruff v. Painter & Eldridge,* 150 Penn St 91, 30 Am St Rep

786; *Kleckner v. Hotel Strand,* 60 Penn Super 617, LRA 1918C 674-675; *Colburn v. Washington State Art Association,* 80 Wash 662, 141 P 1153; *White v. Burke,* 31 Wash2d 573, 197 P2d 1008.

The first case cited, *Bogart v. Cohen-Anderson Co.,* supra, is clearly distinguishable from the case at bar. The purpose of the loan of the automobile in that case was to sell that particular automobile to the prospective purchaser. While payment, as such, for the use of the automobile was not contemplated by the bailor, he surrendered its possession to the bailee in consideration that the bailee would test the car for the purpose of purchasing it, and, as pointed out in the opinion, p. 236, "* * * It is hardly in the same category as the case where A, as a matter of accommodation, loans his car to B for the exclusive benefit and pleasure of the latter." This case falls within what has been termed, perhaps, an exception to the general rule; see reporter's comment 46 ALR2d 410, Note. However, as also pointed out, the bailment cannot be considered only gratuitous since the bailor expects by a sale to profit from that very transaction.

The plaintiff relies heavily upon *White v. Burke,* supra, an action brought by plaintiff, a tax accountant, to recover for money deposited in defendants' hotel safe. The facts there disclose that as an incident to the hotel business the defendants kept a safe as a depository for their guests' valuables; that on many occasions plaintiff had been a customer of the hotel, but was not on this particular occasion; that the parties mutually assisted each other in obtaining business, the plaintiff sending customers to patronize the hotel and the defendants sending parties to the plaintiff accountant. It appears the Washington court considered this prior and continuing mutuality of

actions sufficient consideration to treat the bailment of the money as one for hire. The conclusion of the Washington court seems to be a non sequitur when we consider the true rule of law as set forth in the opinion, *White v. Burke,* supra, p 583:

> "To constitute a bailment for mutual benefit, therefore, it is not necessary that the bailee receive compensation in cash. If he derives a benefit to himself by taking possession of the bailor's property, that in itself constitutes sufficient consideration. It is not sufficient, however, that the act be in appreciation of past favors, nor is it sufficient if done solely in anticipation of future favors. But if it is presently done, as an incident to his business and to obtain a benefit to himself, the transaction is for the mutual benefit of the parties."

But, even if we should consider that such a prior and continuing understanding of the parties as disclosed in the case of *White v. Burke, supra,* is a sufficient consideration to create a bailment for hire, no facts exist in the case before us which will bring it within the conclusion therein reached.

The other cases relied upon by the plaintiff are clearly distinguishable, for in each both the bailor and the bailee received a present consideration, or the bailor holds himself out as providing the accommodation as a part of his general business activities.

The case now before us is similar to the situation arising in *Lancaster v. Jordan Auto Co.,* 121 F2d 912, and *Nelson v. Fruehauf Trailer Co.,* 20 NJ Super 198, 89 A2d 445, affirmed 11 NJ 413, 94 A2d 655. In the former case, the plaintiff had purchased a new car from the defendant, turning in his old car in part payment. The plaintiff's new car was to come from the factory. While waiting for delivery, he used a car of the defendant and an accident with injuries occurred.

The court held this not to be a bailment for mutual benefit. In the latter case, the plaintiff had purchased from the defendant a new trailer and while waiting for the manufacture of the trailer he was permitted to use a used trailer of the defendant; the used trailer was defective and the plaintiff was injured. In holding the bailment not one for mutual benefit, the court said, *Nelson v. Fruehauf,* supra, p 203:

"\* \* \* Here, there was no proof that a promise to make such a loan of a trailer was part of the inducement to the purchase, or that it formed any part of the consideration therefor. Nor was there any proof that the bailee in making the purchase relied on any custom on the part of the defendant to make a gratuitous loan of a trailer to one awaiting delivery of a new trailer on order; \* \* \*"

While the loan of the Chevrolet automobile to the husband of the plaintiff in this case may have created good will and might enhance the prospects of a greater repair business for the defendant in the future, we are of the opinion that, to create a bailment for mutual benefit in this type of a business transaction, reward of a bailor must be found to arise out of the hope of a tangible remuneration from the business transaction then being consummated, or it must be shown that the bailor has held out to the public in general a firm offer that in consideration of the business to be transacted he would create a benefit for a bailee.

Since the facts of this case are not susceptible of an interpretation bringing the plaintiff's case within the boundaries of these rules, the judgment of the trial court granting a new trial must be reversed with instructions to sustain defendant's motion for a directed verdict, and reinstate the verdict of the jury.

McAllister, C.J., dissents.