Homer **RIGBY**, Plaintiff,

v.

**SUBURBAN RENDCO, INC.,** a corporation of the State of New Jersey, Defendant.

Civ. A. No. 80–572.

United States District Court, D. Delaware.

Oct. 5, 1982.

Oliver V. Suddard, and Rhonda A. Hauge, Wilmington, Del., for plaintiff.

James T. McKinstry, and L. Susan Faw, Richards, Layton & Finger, Wilmington, Del., for defendant.

## OPINION

MURRAY M. SCHWARTZ, District Judge.

This action is for personal injuries incurred by plaintiff, Homer Rigby, while operating a piece of heavy construction equipment belonging to defendant, Suburban Rendco, Inc. ("Suburban"). Jurisdiction is based on diversity of citizenship under 28 U.S.C. § 1332, and the amount in controversy, exclusive of costs and interest, exceeds $10,000. Before the Court is defendant's motion for summary judgment.

In order to grant a motion for summary judgment, the Court must find that there are no material facts in dispute. Fed.R. Civ.P. 56(c). Similarly, the Court must weigh the facts in a light favoring the non-moving party, drawing all reasonable inferences to support his contentions. *Tose v. First Pennsylvania Bank, N. A.,* 648 F.2d 879, 883 (3d Cir.), *cert. denied,* 454 U.S. 893, 102 S.Ct. 390, 70 L.Ed.2d 208 (1981). With this in mind, the facts underlying this action are as follows.

On December 11, 1978 plaintiff was employed by Ernest Renda Contracting Co.[1] and was working at a jobsite near Dover, Delaware. Plaintiff, normally a crane operator, was operating a front end loader,[2] to backfill a ditch at the behest of his supervisor. The 955–K became mired in mud and another machine was attached by steel cable in an attempt to extricate it. On first attempt, the steel cable was attached to the 955–K's bumper and, upon towing, plaintiff noticed that the safety cage[3] was loose and that some bolts were missing from the safety cage. The cable was reattached to a bumper bar and, as it was being towed, the safety cage became caught in the 955–K's tracks, collapsed, and fell on plaintiff. Plaintiff sustained head and neck injuries and has brought this suit against Suburban, the title owner of the 955–K.

The parties acknowledge that Suburban was a bailor with regard to the chattel embodied by the 955–K. The issue before the Court in defendant's motion concerns the duty of care owed by Suburban, as bailor, to plaintiff. The extent of this duty will be determined by the relationship between Suburban and Ernest Renda, the bailee. See 8 Am.Jur.2d Bailments § 17, at 14 (1980).

Suburban purchased the 955–K on March 22, 1968.[4] The 955–K was loaned, without compensation, to Ernest Renda from 1971 onward. The record indicates that Ernest Renda alone utilized the 955–K and it was not on the equipment list of any job performed by Suburban. When the 955–K was not located at a jobsite, it was in a New Jersey repair shop owned and operated by Ernest Renda.[5] Two repair slips from the repair shop indicate that the safety cage was removed and reassembled in late 1972 and welded in October of 1976. The 955–K was sold at auction on August 29, 1979 in a sale for Ernest Renda.

## GRATUITOUS BAILMENT

■ Defendant contends that the bailor/bailee relationship was that of a gratuitous bailment. Basically, a bailment of this type is one in which either the bailor or bailee is the sole beneficiary of the bailment. See American Enka Co. v. Wicaco Machine Corp., 686 F.2d 1050, at 1052–1053 (3d Cir. 1982) (citing Pennsylvania law which comports with standard bailment definitions); cf. 7 Am.Jur.2d Bailments § 18 (gratuitous bailment one in which one party derives sole benefit). Since the record discloses no compensation paid to Suburban, defendant contends that the relationship is a gratuitous bailment of the latter genre.

■ If Suburban lent the 955–K to Ernest Renda without deriving a benefit, the duty of care imposed upon Suburban, as a gratuitous bailor, is quite limited. Suburban's sole duty to Ernest Renda, as bailee, was to warn Ernest Renda of any defects of which Suburban had knowledge at the time of transfer of the chattel. See e.g. Howell v. Amerson, 116 Ga.App. 211, 156 S.E.2d 370 (1967); Mudd v. Travelers Indemnity Co., 309 So.2d 297 (La.1975); Hood v. State, 48 Misc.2d 43, 264 N.Y.S.2d 134 (N.Y.Ct.Cl. 1965), aff'd, 28 App.Div.2d 1034, 283 N.Y.

1. Both Ernest Renda Contracting Co. ("Ernest Renda") and Suburban Rendco, Inc. are New Jersey corporations and are wholly owned by Ernest Renda and his wife.

2. Identified as a 955–K Caterpillar Diesel Traxcavator, serial number 85J941 ("955–K").

3. A safety cage is a structure of steel erected over and attached to a piece of heavy equipment. As the name suggests, it functions as a protective device to shield operators from falling objects. Various portions of the record refer to the structure as a "roll cage," "cab guard," "brush cage," "safety cage," "rollover cage," or "protective canopy." For purposes of this motion, a distinction, if any exists, between any of these nominal designations is regarded as irrelevant.

4. The 955–K was purchased by Suburban Contractors, Inc. which changed its name to Suburban Rendco, Inc. in the early 1970's.

5. Plaintiff contends that the custody of the 955–K is in question while in the repair shop because the repair slips indicate the names of two corporations: Suburban and Ernest Renda. The only evidence in the record establishes that the repair shop was owned and operated by Ernest Renda and all repair shop employees were employed by Ernest Renda.

S.2d 695 (3d Dept. 1967); 8 Am.Jur.2d *Bailments* § 148. Thus, in 1971, if Suburban actually knew of a defect in the safety cage, it would have to apprise Ernest Renda of that defect.

■ No evidence in the record supports an inference that Suburban had actual knowledge of a defect in the 955–K's safety cage in 1971.[6] Even if it is assumed that a defect did exist and Suburban thereby breached its duty to warn, the breach of this duty is immaterial because it was not the proximate cause of plaintiff's injury. *See* discussion, *infra,* at 1053–1054.

## BAILMENT FOR MUTUAL BENEFIT

■ Plaintiff contends that the bailment was not gratuitous because Suburban and Ernest Renda interchanged equipment. Generally, for a bailment to be one for mutual benefit, the bailor must receive compensation or some benefit from the loan of the chattel. *See American Enka Co. v. Wicaco Mach. Corp.,* at 1053–1054 (classification of bailment as one for mutual benefit does not require showing of a specific, tangible benefit to the bailee: mere expectation of profit sufficient); *see also Kennedy v. United States Construction Co.,* 545 F.2d 81, 84 (8th Cir. 1976) (compensation may be in form of any benefit); 8 Am. Jur.2d *Bailments* § 20 (same). No compensation was bestowed upon Suburban for the use of the 955–K. Plaintiff contends that

an equipment interchange arrangement existed between the two companies and this bestowed a benefit upon Suburban thereby giving rise to a bailment for mutual benefit.[7] *See Regan v. Compagnie Nationale Air France,* 240 F.Supp. 679, 681 (E.D.N.Y. 1965) (while finding no evidence of an interchange, the Court implicitly recognized that an interchange gives rise to mutual benefit); *see also Kennedy v. United States Construction Co.,* 595 F.2d at 84 (lending of tools among subcontractors can create a bailment for mutual benefit). For the purpose of the disposition of this motion, it is assumed that a bailment for mutual benefit existed.

■ The duty of care owed by a bailor to the bailee when the bailment is mutual, is greater than that due when the bailment is gratuitous. Whereas a bailor in the latter situation has a duty to warn of defects of which he actually is aware, in the former situation the bailor must perform a reasonable inspection before transfer. Furthermore, the bailor has an additional duty to warn of defects discoverable with reasonable care and ascertaining that the chattel is reasonably safe for the intended purpose. *Mann v. Virginia Dare Transportation Co., Inc.,* 283 N.C. 734, 198 S.E.2d 558 (1973).

■■ As noted, no evidence in the record suggests either a design or non-design defect existed at the time of the transfer of the 955–K. Similarly, no evidence suggests that the 955–K was not reasonably safe for

---

**6.** The complaint does not allege a design defect in the 955–K. Nonetheless, plaintiff cites to certain Occupational Health and Safety Administration ("OSHA") regulations concerning the construction of safety cages. *See* 29 C.F.R. §§ 1926.1000–1926.1003 (1980). As plaintiff notes, however, these OSHA regulations were not in effect in 1971; therefore even if the 955–K safety cage would be inadequate under the regulations (an unproven assumption) defendant could not be held to any standard of care based upon unenacted regulations. In fact, the regulations do not require fitting of safety cages on equipment manufactured before July 1, 1979. 29 C.F.R. § 1926.1000(c)(v) (1980). Plaintiff simply asserts that the safety cage, as constructed in 1971, was unsafe—a proposition the Court cannot accept. As the complaint reads, the only possible defect was a defect in the attachment of the safety cage— i.e., improper bolting or welding. The Court

cannot accept the inference propounded by plaintiff that the missing bolts noticed by plaintiff in 1978 were missing in 1971. To draw such an inference and assume a defect in 1971 requires a quantum leap in logic particularly when the safety cage was removed and reassembled in 1972.

**7.** Plaintiff cites to portions of the record showing that equipment of both Suburban and Ernest Renda was present on the jobsite. This supports an inference that Suburban loaned the 955–K as part of an informal interchange arrangement. Whether such an interchange actually occurred constitutes a factual dispute but it is not a material fact because the Court finds that Suburban satisfied the duty of care imposed on either a gratuitous or mutual bailor.

its intended purpose.[8] Upon delivery, the obligations of a bailor cease and the bailor cannot be held liable to the bailee or third persons for defects arising after delivery. *See e.g. State v. Standard Oil Co. of California,* 3 Ariz.App. 389, 414 P.2d 992 (1966); *Peterson v. Nevada Motor Rentals, Inc.,* 28 Colo.App. 102, 470 P.2d 905 (1970); *Lyons v. Jahncke Service, Inc.,* 125 So.2d 619 (La. App.1960); 8 Am.Jur.2d *Bailments* § 278 at 1010–12 (1980). Only when the bailor retains some control of the chattel, such as an agreement to repair, maintain, or inspect, can a bailor be held liable to third persons for defects arising after the transfer of the chattel. *See Annotation: Bailor—Liability for Injury,* 46 A.L.R. 404, § 8, at 424; *cf. State v. Standard Oil of California,* 414 P.2d 992. In this action, the bailor made no express agreement to repair the chattel, and, in fact, the bailee performed all repair work. In such an instance, where the bailee made the repairs, it is the bailee's responsibility to make certain the chattel is reasonably safe for use by its employees. *See Lambert v. Pittsburgh Bridge and Iron Works,* 227 Pa.Super. 50, 323 A.2d 107 (1974), *aff'd,* 463 Pa. 237, 344 A.2d 810 (1975); 8 C.J.S. *Bailments* § 40 at 479; 8 Am.Jur.2d *Bailments* § 280.

Upon the facts as construed reasonably in favor of the plaintiff, it makes no difference whether the bailment was gratuitous or one for mutual benefit. Suburban did all that it was obligated to do under either standard of care.

PROXIMATE CAUSE

Even if it is assumed, contrary to logic and in the utter absence of factual basis in the record, that a non-design defect existed at the time of the transfer of the 955–K, Suburban cannot be held liable to plaintiff because the breach of any duty was not the proximate cause of his injury. *See* Restatement (Second) of Torts, § 281, at 4 (1965). While a non-design defect in the 955–K must be assumed to be the proximate cause of plaintiff's injury for purposes of this motion, such an assumption fails to

consider the genesis of the defect. The record conclusively establishes that the safety cage was disassembled and reassembled once and rewelded at least once. Since these repairs occurred within the sole control of Ernest Renda, any preexisting defect caused by Suburban's negligence is obviated by an intervening cause. *See Dickson v. Southern California Edison Co.,* 136 Cal. App.2d 85, 288 P.2d 310 (1955).

CONCLUSION

Whether viewed as a gratuitous or mutual benefit bailment, Suburban owed only a limited duty to plaintiff. The general rule is that a bailor cannot be held liable for injuries caused while the chattel is beyond his control. No justification exists for deviating from this premise. The record adduces no evidence that Suburban was negligent or breached the duty imposed by law upon it. The chattel was in the sole control and custody of Ernest Renda when plaintiff was injured and on the facts of this case, any cause of action against Suburban is simply unfounded. For the foregoing reasons, defendant's motion for summary judgment will be granted.

---

**8.** Once again, plaintiff's reliance upon unenacted OSHA regulations cannot be utilized to establish the reasonableness of safety devices devised and utilized before promulgation of the regulation. Plaintiff did not allege a design defect in his complaint.