James WAGGONER,
Appellant (Plaintiff),

v.

GENERAL MOTORS CORPORATION,
Burman Motors, Inc., agent for General
Motors Corporation and Burman Motors, Inc., d/b/a Western Rentals, Appellees (Defendants).

No. 87–209.

Supreme Court of Wyoming.

March 17, 1989.

J. Dudley Butler of Skiles, Hageman & Butler, Laramie, for appellant.

Rebecca A. Lewis of Hirst & Applegate, Cheyenne, for appellee Gen. Motors Corp.

Paul D. Schierer of Pence and MacMillan, Laramie, for appellee Burman Motors, Inc.

Before BROWN *, C.J., and THOMAS, CARDINE **, URBIGKIT, and MACY JJ.

MACY, Justice.

This is a personal injury/products liability case initiated by appellant James Waggoner against appellees General Motors Corporation (General Motors) and Burman Motors, Inc. (Burman Motors) as the result of an automobile collision. The district court granted summary judgment in favor of appellees on appellant's strict liability and breach of warranty claims, and the jury reached a verdict adverse to appellant's negligence claims.

We affirm.

Appellant presents these issues for our consideration:

I. Was the District Court's refusal to give the Plaintiff's jury instructions pertaining to bailments and the degree of care related thereto prejudicial error?

II. Was the District Court's admittance of the deposition of Dr. Curnow arbitrary, capricious and an abuse of the Court's discretion?

III. Was the District Court's dismissal by Summary Judgment of the Plaintiff['s], Jim Waggoner's, action for Breach of Implied Warranty reversible error?

IV. Was the * * * District Court's dismissal by Summary Judgment of Plaintiff's tort action based on Strict Liability reversible error?

In 1982 appellant purchased, in New Mexico, a new pickup manufactured by General Motors. Appellant experienced a variety of problems with the pickup, and, as a result of Burman Motors' inability to

* Chief Justice at time of oral argument; retired June 29, 1988.

** Became Chief Justice June 30, 1988.

satisfy appellant's continued complaints, General Motors arranged to take the vehicle to Denver for repairs during the fall of 1984. A representative of General Motors requested Burman Motors, a Laramie, Wyoming, General Motors dealership, to provide appellant with a replacement vehicle, with General Motors allegedly paying the rental cost. Appellant delivered his pickup to Burman Motors for transport to Denver on September 24, 1984.

Appellant requested Burman Motors to provide him with a four-wheel drive replacement vehicle capable of seating four to five adults, as he was expecting out-of-state guests for a scheduled hunting trip. Burman Motors, accordingly, provided appellant with a Chevrolet Suburban, with the understanding that it had to be returned by October 11, 1984, since it had been reserved as of that date by another party. Appellant returned the Suburban on October 11, although his pickup had yet to be returned from Denver. Burman Motors offered appellant a Jeep pickup as a further replacement vehicle. Appellant declined to accept it, however, due to its lack of adequate seating capacity.[1] Burman Motors indicated that the only vehicle it had available which met appellant's demand was a 1972 Jeep Wagoneer that they had recently received in trade. After inspecting the Jeep, appellant expressed that it was not satisfactory, but the representative for Burman Motors indicated that it was the only vehicle available meeting appellant's needs, and he stated something to the effect that appellant could take it or leave it. In a deposition, appellant stated that he experienced problems with the brakes on the Jeep immediately upon leaving Burman Motors' parking lot and that, when he reached home, he called the dealership to complain about the condition of the vehicle. Appellant apparently did not request that Burman Motors repair the Jeep, and he continued to drive it over the next ten days.

On the morning of October 21, 1984, appellant was driving his family to church in the Jeep. A "skiff" of snow covered the roads. As appellant, who was driving east, approached a controlled intersection, a Ford Bronco approached the same intersection from the north. The Bronco ran the stop sign, and appellant collided broadside with it. The driver of the Bronco, Elizabeth Fiedler, who was not made a party to this action, was cited for failure to yield right of way. Appellant allegedly sustained injuries from this accident.

On February 27, 1986, appellant filed a complaint initiating this action against General Motors and Burman Motors. In this original complaint, appellant alleged causes of action premised on strict liability in tort, negligence, and negligence per se. By amended complaint, filed April 13, 1987, appellant added a claim for breach of implied warranties. Appellees timely filed answers to the original and amended complaints and asserted affirmative defenses. Thereafter, General Motors and Burman Motors separately filed motions for summary judgment. The district court conducted a hearing on the motions on April 27, 1987. Apparently, as asserted by appellees in their briefs, appellant withdrew his claim of negligence per se during the motion hearing, although this fact is not verifiable on the limited record provided for review which does not include a transcript of the motion hearing. In any event, that claim is never mentioned further in the record. In a subsequent decision letter and order, the district court granted appellees' motions for summary judgment on the claims of strict liability and warranty.

The case proceeded to trial solely on the issue of negligence. A three-day trial commenced June 1, 1987, and, at its conclusion, the jury returned a verdict in favor of appellees, finding that neither appellee was negligent, that appellant was not negligent, that Elizabeth Fiedler was 100% negligent, and that the negligence of Fiedler was a direct cause of the accident. The jury also found that appellant had sustained no compensable damages. Judgment on the ver-

---

1. Appellant was seeking a greater seating capacity in the replacement vehicle than was available in his own pickup.

dict was entered on July 16, 1987, and this appeal followed.[2]

As a preliminary matter, we note that General Motors filed a motion in this Court to dismiss this appeal or to strike the brief of appellant, citing appellant's failure to comply with the Wyoming Rules of Appellate Procedure. Pursuant to W.R.A.P. 4.02, the appellant, within ten days of filing his notice of appeal, must "file and serve on the appellee a description of the parts of the transcript which he intends to include in the record, and, unless the entire transcript is to be included, a statement of the issues he intends to present on the appeal." The rule further provides that, if the appellee determines a transcript of additional parts of the proceedings is necessary, given the appellant's statement of the issues, the appellee may arrange for these additions to the record. In the instant case, although appellant's counsel arranged for only a limited portion of the proceedings to be transcribed and transmitted to this Court, he neither designated those portions in accordance with the rule nor provided appellees with a statement of the issues within the time provided by the rule.

■ Although the failure to comply with W.R.A.P. 4.02 is not jurisdictional, *see* W.R.A.P. 1.02, and although we denied General Motors' motion, we observe that, where there is no transcript or an insufficient transcript, we accept the findings of the trial court as the only basis for deciding issues pertaining to the evidence. *Osborn v. Pine Mountain Ranch*, 766 P.2d 1165 (Wyo.1989); *Salt River Enterprises, Inc. v. Heiner*, 663 P.2d 518 (Wyo.1983). Further, as pointed out by General Motors, counsel for appellant failed to include page references to the record in the statement of facts in his brief as required by W.R.A.P. 5.01(3). We recently cautioned counsel practicing before this Court regarding the importance of complying with this rule, *V-1 Oil Company v. Ranck*, 767 P.2d 612 (Wyo.1989), and we reiterate that admoni-

tion here. Although not dispositive in this case, the failure of counsel for appellant to comply with the provisions of the Wyoming Rules of Appellate Procedure certainly did not enhance appellant's cause before this Court.

■ In his first issue, appellant contends that the district court's refusal to give his jury instructions regarding bailments, and the degree of care related thereto, constituted prejudicial error. We find, however, that we do not have a sufficient record before us with which to properly evaluate appellant's contention. We thus must accept the findings of the trial court as the only basis for deciding this evidentiary issue. *Osborn*, 766 P.2d 1165.

Appellant's refused instructions essentially would have instructed the jury on the distinction between a gratuitous bailment and a bailment for mutual benefit, on the different duty of care applicable in each situation, and that an automobile rental contract creates a bailment for mutual benefit. The gravamen of appellant's contention is that the district court took from the jury the factual question of the type of bailment created in this case—assertedly a bailment for mutual benefit—and thereby prejudiced appellant by not allowing his claim against appellees to be tested by the higher standard of care associated with bailments for mutual benefit.

■ A gratuitous bailment has been defined as one in which either the bailor or the bailee is the sole beneficiary of the bailment. *Rigby v. Suburban Rendco, Inc.*, 548 F.Supp. 202, 204 (D.Del.1982); 3 Am.Law Prod.Liab.3d, *Bailments and Leases of Products* § 36:5 (1987). In a gratuitous bailment the bailor has the minimal duty to warn of defects of which he has actual knowledge at the time of the lending and which are likely to cause injury. *Miller v. Hand Ford Sales, Inc.*, 216 Or. 567, 340 P.2d 181, 183 (1959); *Rigby,*

---

**2.** Burman Motors filed a cross-appeal on the issue of whether the district court, in its summary judgment decision, correctly found that the doctrine of strict liability applies to lease transactions. This Court dismissed the cross-appeal upon its own motion, finding that Burman Motors was not an aggrieved party, which is a necessary prerequisite for appellate jurisdiction. *See Merritt v. Merritt*, 586 P.2d 550 (Wyo.1978).

548 F.Supp. at 205; 9 S. Williston, *Williston on Contracts* § 1039 at 909 (3d ed. 1967).

▮ A bailment for mutual benefit arises when both of the parties to the contract receive a benefit. *Miller*, 340 P.2d at 184. Generally, the bailor must receive compensation or some benefit from the loan of the chattel. *Rigby*, 548 F.Supp. at 205. A bailment for mutual benefit may arise, however, even where it is gratuitous if the lending is incidental to some other business transaction between the parties. *Global Tank Trailer Sales v. Textilana–Nease, Inc.*, 209 Kan. 314, 496 P.2d 1292, 1295 (1972); *Nelson v. Fruehauf Trailer Co.*, 20 N.J.Super. 198, 89 A.2d 445, 447, *cert. granted* 10 N.J. 346, 91 A.2d 671 (1952), *aff'd* 11 N.J. 413, 94 A.2d 655 (1953); 9 S. Williston, *supra*, § 1040 at 913. If the bailment is for the mutual benefit of the parties, such as a bailment for hire, the duty of care owed by the bailor is greater than in a gratuitous bailment. *Rigby*, 548 F.Supp. at 205; *Miller*, 340 P.2d at 184; 3 Am.Law Prod.Liab.3d, *supra* at § 36:7. The bailor, in such situation, must perform a reasonable inspection before transfer to determine if the chattel is fit for the purposes intended and warn of defects discoverable with reasonable care or make the article safe for its intended purpose. *Rigby*, 548 F.Supp. at 205; *Miller*, 340 P.2d at 184; 3 Am.Law Prod.Liab.3d, *supra* at § 36:7.

Appellant offered several overlapping instructions regarding bailments. The two refused instructions which we perceive as being relevant to the issue provided as follows:

### INSTRUCTION NO. ____

The jury is instructed that the relationship between automobile dealers who rent out automobiles and people who rent automobiles from dealers [is] that of bailor and bailee and though a bailor of an automobile for hire is not an insurer against injuries from defects [in the] automobile, he is held to a high degree of care in examining the automobile before renting it.

### INSTRUCTION NO. ____

The jury is instructed that the duties of a bailor are generally to be determined according to the character of the bailment, that is, whether the bailment is one for mutual benefit or gratuitous. If the bailment of a chattel is gratuitous, bailor has but a minimum duty toward bailee, that is to warn him of any defects in chattel of which he is aware that are likely to cause injury to person or property of borrower but if bailment is for mutual benefit of both bailor and bailee such as a let for hire agreement, then the general rule is that while the bailor is not an absolute insurer against injuries from defective chattel he is charged with duty of inspection to determine whether or not chattel is fit for purpose intended, and thus if defect was discoverable he becomes liable for injuries to bailee arising from the unsafe condition on theory of implied warranty of fitness. A bailment for mutual benefit arises whenever it appears that both of the parties to the contract receive a benefit from the transaction.

In refusing these instructions, the district court stated:

The Court refuses to give this instruction because the instruction is not clearly adjusted to the facts as to whether there was a contract of bailment for the mutual benefit of the parties, and the Court has opted instead to use negligence as a standard, given the questionable nature of this arrangement in which the plaintiff found himself in possession of this vehicle.

There are too many questions about whether it was a lease agreement, a loan agreement, or rental agreement, a third party beneficiary agreement, that the Court believes that the proper standard in this case is negligence supplement[e]d by the additional burden placed by Instruction 8A that the Court proposes to give.

The district court gave the jury a standard negligence instruction which defined

negligence as "the failure to use ordinary care. Ordinary care means that degree of care which might reasonably be expected from the ordinary careful person under the same or similar circumstances." The district court supplemented this general instruction with the following instruction:

You are instructed that the Defendants were under a duty to exercise ordinary care to furnish a reasonably safe vehicle to Plaintiff. Though the Defendants are not insurers against injuries from defects in the vehicle, Defendants must exercise ordinary care in examining the vehicle before furnishing it. Defendants must also exercise reasonable care to inspect and repair the vehicle whenever called on to do so during the period that the vehicle is furnished.

The instructions offered by appellant are accurate statements of the law. If indeed the transaction between the parties was a bailment for mutual benefit, the instructions given by the district court, while delineating a duty to inspect, were deficient in not describing the further duty to determine if the chattel is fit for the purposes intended and to warn of any defects or make necessary repairs. Our problem, however, is in determining whether the evidence elicited at trial was sufficient to warrant an instruction on bailment for mutual benefit.

Appellant has not provided a transcript in the record on appeal of any of the testimony at trial regarding the nature of the transaction of the parties. The record does contain a document, designated "PLAINTIFF'S EXHIBIT 1," which appears to be a copy of a rental agreement between Western Rentals and appellant. There is no indication, however, of whether or not this exhibit was admitted into evidence and, if so, what testimony was received regarding it. The record on appeal is also devoid of any testimony or other evidence of the relationship between Western Rentals and Burman Motors. Similarly, there is no testimony or evidence in the record as to whether Burman Motors received any consideration from General Motors, or anyone

else, for appellant's use of the vehicle. The only other evidence in the record of the nature of the transaction between the parties is the pretrial deposition testimony of appellant and his wife to the effect that the transaction was a lease agreement for which General Motors would pay the rental fee. Whether similar testimony, or testimony to the contrary, was elicited at trial cannot be ascertained.

██ The district court, in its comments upon refusing appellant's instructions, indicated that the evidence would not support such instructions.[3] On the record before us we cannot say otherwise. We have stated that a party is entitled to a jury instruction upon its theory of the case only if such theory is supported by competent evidence. *Rivermeadows, Inc. v. Zwaanshoek Holding and Financiering B.V.*, 761 P.2d 662, 670 (Wyo.1988); *Short v. Spring Creek Ranch, Inc.*, 731 P.2d 1195, 1199 (Wyo. 1987). The failure to provide a transcript of the relevant evidence limits this Court to addressing those assertions of error which do not require an inspection of the transcript. *Id.* at 1199; *Salt River Enterprises, Inc.*, 663 P.2d 518 (Wyo.1983). On this partial record we simply cannot determine if the refusal to give appellant's instructions was error, and we must sustain the district court's refusal to give these instructions.

## USE OF DEPOSITION AT TRIAL

In his second issue, appellant asserts that the district court acted in an arbitrary and capricious manner and abused its discretion by admitting into evidence the discovery deposition of Dr. Curnow, one of appellant's treating physicians. We agree that the admission of this deposition testimony was error, but we determine that appellant was not prejudiced thereby, and the error was thus harmless.

██ We have consistently held that the admission of evidence is within the sound discretion of the trial court and that evidentiary rulings will not be disturbed absent an abuse of discretion. *Mintle v. Mintle,*

3. The instructions conference was transcribed and included in the record on appeal.

764 P.2d 255, 257 (Wyo.1988); *Lawrence v. Farm Credit System Capital Corporation,* 761 P.2d 640 (Wyo.1988). We have defined an abuse of discretion as an error of law committed by the court under the circumstances. *Id.* at 653; *Martinez v. State,* 611 P.2d 831, 838 (Wyo.1980). We look, therefore, to the circumstances under which this deposition testimony was admitted to determine if an error of law has occurred.

In March of 1987, General Motors took Dr. Curnow's deposition for discovery purposes. All parties were represented by counsel during the deposition. Appellant unsuccessfully attempted to serve a subpoena on Dr. Curnow on May 29, 1987, two days before trial. On the final day of trial, both appellees moved for admission of the discovery deposition.[4] Counsel for Burman Motors indicated to the district court that Burman Motors had been relying to some extent upon appellant's subpoena and that, pursuant to contacts with the doctor's office, Burman Motors was under the "impression" that the doctor would be available for trial testimony. Apparently realizing that a problem existed, counsel for Burman Motors attempted to subpoena Dr. Curnow on the second day of the trial for an appearance on the following final trial day. The sheriff's office was unable to serve the doctor, and counsel for Burman Motors informed the district court during the motion conference that the doctor was in surgery on that final day of trial. The district court, over the objection of appellant, granted appellees' motion for admission of the deposition under the authority of W.R.C.P. 32 but limited the deposition testimony to those parts of the direct examination which the court felt were adequately tested by cross-examination at the taking of the deposition. Thereafter, excerpts from Dr. Curnow's deposition were read to the jury and into the record.

W.R.C.P. 32 provides in relevant part:

(a) *Use of depositions.*—At the trial or upon the hearing of a motion or an interlocutory proceeding, any part or all of a deposition, so far as admissible under the rules of evidence applied as though the witness were then present and testifying, may be used against any party who was present or represented at the taking of the deposition or who had reasonable notice thereof, in accordance with any of the following provisions:

\* \* \* \* \* \*

(3) The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds: \* \* \* (D) *that the party offering the deposition has been unable to procure the attendance of the witness by subpoena;* or (E) *upon application and notice, that such exceptional circumstances exist as to make it desirable, in the interest of justice and with due regard to the importance of presenting the testimony of witnesses orally in open court, to allow the deposition to be used*[.]

(Emphasis added).

The rule is premised on the principle that oral testimony is preferable to a deposition. 8 C. Wright and A. Miller, Federal Practice and Procedure: Civil § 2146 (1970). *See also Napier v. Bossard,* 102 F.2d 467 (2d Cir.1939) (per Learned Hand, deposition is treated as a substitute—second best, not to be used when original is available). A showing that due diligence was exercised in attempting to secure the presence of the witness is required from the party seeking to introduce the deposition testimony of the witness. *Sutton v. Shufelberger,* 31 Wash.App. 579, 643 P.2d 920, 924–25 (1982); *Palfy v. Rice,* 473 P.2d 606 (Alaska 1970). We are not convinced that appellees made a sufficient showing to warrant the admission of this deposition testimony. The failure of appellees to attempt to subpoena Dr. Curnow until the day prior to the need for his testimony and their misplaced reliance on the attempted subpoena by appellant and on informal contacts with the doctor's office do not demonstrate diligence. These circumstances, in our opinion, do not fall within the exceptions contemplated by W.R.C.P. 32(a)(3)(D) and (E)

---

4. This motion conference was transcribed and included in the record on appeal.

for use of depositions in lieu of oral testimony. The admission of Dr. Curnow's deposition testimony was an abuse of discretion under the circumstances of this case.

■ Although we determine the admission of this testimony was error, we conclude that it does not warrant a reversal in this instance. W.R.C.P. 61 provides:

> No error in either the admission or the exclusion of evidence * * * is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

W.R.C.P. 61 applies to cases on appeal. *Hall v. Hall*, 708 P.2d 416, 422 (Wyo.1985). The deposition testimony of Dr. Curnow admitted at trial went to questions regarding appellant's injuries, medical treatment, and prognosis; i.e., damages. The jury, by its verdict, found that neither appellee was negligent and that the negligence of Elizabeth Fiedler, a nonparty, was the entire proximate cause of the accident and any damages allegedly sustained by appellant. The jury, in responding to a question on the verdict form submitted to it, found as follows:

> 21. Considering all fault to be 100% fill in below the percentage by which the fault of each was a direct cause, of the accident and of the injuries and damages allegedly sustained as a result thereof:
>
> James Waggoner  0 %
> General Motors  0 %
> Burman Motors  0 %
> Western Rentals  0 %

Elizabeth Fiedler  100 %

Clearly, the jury found that the negligence of Elizabeth Fiedler was the entire proximate cause of the accident. Thus, given the verdict, any error in admitting testimony regarding damages was harmless.

## STRICT LIABILITY AND WARRANTY

■ By complaint and amended complaint, appellant asserted causes of action against appellees on the basis of strict liability in tort and upon the implied warranties of merchantability and fitness for a particular purpose.[5] The district court granted summary judgment in favor of appellees on both of these theories of recovery.[6] In granting summary judgment on the strict liability claims, the district court found that strict liability was applicable to lease transactions but that assumption of the risk was a complete and absolute defense to a cause of action premised on strict liability and that appellant's admitted knowledge of the alleged defect was sufficient to establish assumption of the risk. Regarding the implied warranties, the district court found that the warranties only attach to a "sale" transaction and they, therefore, were inapplicable to the nonsale transaction involved in this case.

These determinations by the district court raise a number of issues of first impression in Wyoming, most of which emanate from our recent adoption of strict liability in tort as a valid cause of action, *Ogle v. Caterpillar Tractor Co.*, 716 P.2d 334 (Wyo.1986), and particularly in relation to the interplay of that doctrine, and actions founded on warranty, with Wyoming's comparative negligence statute.[7] We are not necessarily convinced that the district court properly resolved all of these

---

5. *See* Wyo.Stat. §§ 34–21–231 (U.C.C. § 2–314) (merchantability) and 34–21–315 (U.C.C. § 3–115) (fitness for a particular purpose) (1977).

6. The strict liability and warranty claims against General Motors, apparently premised on agency, were tenuous at best. General Motors did not manufacture the Jeep, was not a lessor of the vehicle, and had no apparent control over its condition.

7. *See, e.g.,* Greenlee and Rochelle, *Comparative Negligence and Strict Tort Liability—A Marriage of Necessity,* 18 Land & Water L.Rev. 643 (1983) (anticipating this Court's adoption of strict liability and advocating application of comparative negligence principles to strict liability actions).

issues. We conclude, however, that we need not reach them in this case and that the summary judgment should be affirmed because the findings regarding proximate cause made by the jury in the negligence action collaterally estop appellant from relitigating this critical question of fact, common to all appellant's theories of recovery, in a subsequent proceeding.

A similar disposition was reached in the case of *Hurley v. Beech Aircraft Corporation*, 355 F.2d 517 (7th Cir.), *cert. denied* 385 U.S. 821, 87 S.Ct. 48, 17 L.Ed.2d 59 (1966), a case decided under Indiana law. In that case, the plaintiffs, as personal representatives of decedents killed in an airplane crash, brought an action against the aircraft manufacturer premised on negligence and breach of implied warranties. The district court dismissed the warranty claim for lack of privity of contract. The case was thereafter tried to the court solely on negligence, and the court entered judgment for the defendant, finding, *inter alia*, a lack of defect in the airplane. The plaintiffs appealed only the judgment dismissing their warranty claim.

On appeal, the Seventh Circuit noted that, subsequent to the district court's ruling on the plaintiffs' warranty claim, it had held in another case that privity of contract was not essential to an implied warranty claim in Indiana. Thus, the district court's dismissal of the plaintiffs' warranty claim was error. The Seventh Circuit further observed, however, that proof of defect was essential to both of the plaintiffs' causes of action and that the district court had determined that question of fact adversely to the plaintiffs in the negligence judgment from which they did not appeal. The court held, therefore, that the plaintiffs were barred from proceeding under the warranty count under the doctrine of collateral estoppel by judgment. The court concluded that, although the dismissal of the warranty claim was erroneous, it was not prejudicial to the plaintiffs. *Id.* at 522.

The *Hurley* court elaborated on the doctrine of estoppel by judgment in the following passage from that opinion:

*Yates v. United States*, 354 U.S. 298, 335–336, 77 S.Ct. 1064, 1085–1086, 1 L.Ed.2d 1356 (1957) is also pertinent:

> "We agree * * * that the nonexistence of a fact may be established by a judgment no less than its existence; that, in other words, a party may be precluded under the doctrine of collateral estoppel from attempting a second time to prove a fact that he sought unsuccessfully to prove in a prior action. * * *
>
> " * * *. That doctrine [collateral estoppel] makes conclusive in subsequent proceedings only determinations of fact, and mixed fact and law, that were essential to the decision."

Later in the same opinion, the court makes the following statement: "The normal rule is that a prior judgment need be given no conclusive effect at all unless it establishes one of the ultimate facts in issue in the subsequent proceeding." *Id.* at 338, 77 S.Ct. at 1087.

> We have held that even if a subsequent action is a different cause of action, a right, question, or fact determined in the prior action must, as between the same parties, be taken as conclusively established, so long as the judgment in the prior action remains unmodified.

*Id.* at 522.

In a more recent case, *LaVay Corporation v. Dominion Federal Savings & Loan Association*, 830 F.2d 522 (4th Cir. 1987), *cert. denied* —— U.S. ——, 108 S.Ct. 1027, 98 L.Ed.2d 991 (1988), the Fourth Circuit reached a similar result with respect to one of the issues raised by the plaintiffs' cross-appeal in that case. The plaintiffs in *LaVay Corporation* asserted several claims against the defendants, including actual and constructive fraud and violation of the Racketeer Influenced and Corrupt Organizations Act (RICO). The district court dismissed the RICO claim, and the fraud claims were resolved in favor of the various defendants by dismissal, jury verdict, and judgment notwithstanding the verdict. The fraud determinations were not appealed by the plaintiffs. One of the plaintiffs did prevail upon a claim of

breach of fiduciary duty against one of the defendants. In reviewing the dismissal of the RICO claim, the Fourth Circuit cited *Hurley* and said that it did not need to reach the issue of whether the dismissal was appropriately granted on the ground relied upon by the district court, i.e., that predicate acts of mail fraud failed to establish a pattern of racketeering activity, because the plaintiffs were now precluded from asserting acts of fraud due to their resolution in the district court and, therefore, the plaintiffs' one surviving claim, a single breach of fiduciary duty, would not support a RICO claim requiring proof of a pattern of racketeering activity. *See also Lewis v. Baker*, 243 Or. 317, 413 P.2d 400 (1966) [8] (citing *Hurley* and holding that trial court's withdrawal of warranty issue was not reversible error where an element of the warranty claim was resolved against plaintiff by jury verdict on negligence claim, which verdict the court therein affirmed).

■ In accordance with the aforementioned cases, we conclude that the doctrine of collateral estoppel by judgment is an appropriate basis upon which to affirm the district court's grant of summary judgment on appellant's strict liability and warranty claims. The jury, by its verdict in this case, clearly determined that Elizabeth Fiedler's negligent running through a stop sign was the entire proximate cause of the accident.[9] Proof of proximate cause is as necessary under warranty and strict liability causes of action as it is in a negligence action. 1 Am.Law Prod.Liab.3d, *Proximate Causation* § 4:3 (1987). Here, the fact question of proximate cause, or more precisely "cause in fact," [10] was determined against appellant in the trial of his negligence claim. Although, as opposed to the *Hurley* case, appellant has appealed the negligence determination, we herein have affirmed the district court on that claim

and that judgment is now just as conclusive as if it had not been appealed. Under the circumstances, therefore, we need not determine whether or not the district court properly granted summary judgment on appellant's warranty and strict liability claims because, even if the grant of summary judgment was erroneous, and we do not imply that it was, an essential element of those causes of action has been conclusively established adversely to appellant, and any error in granting summary judgment was not prejudicial to appellant due to the bar of collateral estoppel by judgment.

Affirmed.

BROWN, J. (Retired), files a specially concurring opinion.

BROWN, Justice (Retired), specially concurring.

I concur in the result in this case, but do not agree with the majority's application of the doctrine of collateral estoppel to Waggoner's theories of strict products liability and warranty.

In disposing of the appellate issues, the majority seems to hold that the jury finally decided, as a factual matter, that Fiedler's negligence was the sole *actual* cause of Waggoner's accident. At 1203. Stated another way, the majority is holding that when the jury decided Fiedler was one hundred percent at fault as the direct cause of Waggoner's accident, the jury, as a factual matter, had necessarily excluded any other *actual* causal factor in the accident, i.e., an alleged defect in the vehicle.

The majority's authority for this application of the doctrine of collateral estoppel is *Hurley v. Beech Aircraft Corporation*, 355 F.2d 517 (7th Cir.1966), which concerned an airplane that crashed after one of its wings separated from its fuselage. That case is factually distinguishable from

---

**8.** Partially overruled on other grounds by *McEwen v. Ortho Pharmaceutical Corporation*, 270 Or. 375, 528 P.2d 522 (1974).

**9.** It is not entirely clear by the verdict form whether or not the jury found that the vehicle was defective; i.e., whether or not the brakes failed wholly or partially. It is apparent, how-

ever, that, even if the jury believed the brakes were defective, it did not attribute the cause of the accident to any such defect.

**10.** *See* W. Prosser and W. Keeton, *The Law of Torts* § 41 (5th ed. 1984) (causation in fact).

this one; in *Hurley*, there were specific trial court findings of *no defect* in the airplane. *Id.* at 520. Based on *those* specific findings concerning the *nonexistence of any defect*, the appellate court was able to conclude that an outstanding action for breach of warranty was collaterally estopped, because *the factual determination that a defect existed* was the *identical* element of proof needed to put forth a prima facie case of breach of warranty. The *Hurley* court collaterally estopped one party from relitigating a specific fact issue which had been decided in earlier litigation. However, it did invoke the more general factual determination that only one of the parties had been negligent.[1]

Unlike the situation in *Hurley*, the factfinder in this case never made a factual finding that any alleged defect did not contribute in any way to Waggoner's accident. This is because the jury was never instructed to consider that factual issue. The jury instruction which led to the finding of one hundred percent fault of Fiedler in this case reads:

> You are instructed that the Defendants [General Motors, Burman Motors, and Western Rentals] were under a duty to exercise ordinary care and furnish a reasonably safe vehicle to Plaintiff [Waggoner]. Though the Defendants are not insurers against injuries from defects in the vehicle, *Defendants must exercise ordinary care in examining the vehicle before furnishing it. Defendants must also exercise reasonable care to inspect and repair the vehicle whenever called on to do so during the period that the vehicle is furnished.*

(Emphasis added). This instruction requires the jury to consider whether the defendants negligently "inspect[ed] and repair[ed]" the bailed vehicle as an actual cause of Waggoner's accident. It does not require the jury to give any consideration to the potential presence of a defect in that vehicle that could be an actual cause of the accident. The jury was not instructed to consider whether an alleged defect contributed to the accident, and consistent with that instruction it never made such a finding. Based on this, in applying the doctrine of collateral estoppel, the majority must be inferring what the jury would have decided on that particular issue of fact had it been so instructed.

I fear this rather protracted reasoning stretches the doctrine of collateral estoppel a bit too far. It can be interpreted as implying that a party can be collaterally estopped on an issue of fact based on a judicial *inference* drawn from a similar factual determination in previous litigation between the parties. We have stated that the doctrine of collateral estoppel prevents "relitigation of issues which were involved *actually* and *necessarily* in the prior action between the same parties." *Delgue v. Curutchet*, 677 P.2d 208, 214 (Wyo.1984). Based on the record in this case, we cannot determine whether this jury, as instructed, *actually* and *necessarily* decided that an alleged defect could not have been an actual cause of Waggoner's accident. That uncertainty tells me we should avoid gambling with the scope of the doctrine of collateral estoppel to affirm these issues.

Having made this point, I offer an alternate method for affirming the trial court. I believe the real problem here was Waggoner's taking his theories of strict liability and warranty as far into the litigation as he did. To put either of those theories before a jury, Waggoner had to allege some facts showing a defect in the bailed vehicle; he never made that showing.

This court can affirm the trial court on any legal basis appearing in the record. *Boehm v. Cody Country Chamber of Commerce*, 748 P.2d 704, 706 (Wyo.1987). I would apply that standard of appellate review and hold that Waggoner did not present the trial court with a genuine issue of material fact to justify sending his strict

---

1. The other cases cited as authority in the majority opinion rely on the holding in *Hurley* and are therefore similarly distinguishable. See *La-Vay Corporation v. Dominion Federal Savings & Loan Association*, 830 F.2d 522, 529 (4th Cir. 1987) cited at 1203; and *Lewis v. Baker*, 243 Or. 317, 413 P.2d 400, 404 (1966) cited at 1204.

liability or warranty claims to the jury. See W.R.C.P. 56.